LEWIS
AND
ROCA
LLP
L A W Y E R S

Sean D. Garrison (#014436)
SGarrison@LRLaw.com
Shane E. Olafson (#024605)
SOlafson@LRLaw.com
**LEWIS AND ROCA LLP**
40 N. Central Avenue
Phoenix, Arizona  85004-4429
Telephone (602) 262-5311

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AFL Telecommunications LLC,<br><br>                          Plaintiff,<br><br>           v.<br><br>SurplusEQ.com, Inc., Tech Sales LLC, Daniel Parsons, and Jane Doe Parsons,<br><br>                          Defendants. | No. _____<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff AFL Telecommunications LLC ("AFL" or "Plaintiff") for its complaint, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     Plaintiff AFL Telecommunications LLC is a limited liability company organized and existing under the laws of the state of Delaware, with a principal place of business at 170 Ridgeview Center, Duncan, South Carolina 29334, and is the exclusive U.S. licensee of rights in the FUJIKURA mark for optical fiber splicers pursuant to a written license agreement, and prior to that pursuant to an unwritten agreement and practice.

2.     Upon information and belief, defendant SurplusEQ.com, Inc. ("SurplusEQ") is a corporation organized and existing under the laws of Arizona, with its principal place of business at 2052 East Topeka Drive, Phoenix, Arizona 85024, in this district.  Plaintiff is informed and believes that SurplusEQ conducts its sale of fusion splicers and other products through its websites, including www.surpluseq.com, www.fiberopticeq.com, and

2394447.1


www.computereq.com, and its eBay.com storefront located online at http://stores.ebay.com/SurplusEQ-store.

3.   Plaintiff is informed and believes that SurplusEQ transacts business throughout the U.S., including in this district, through its websites and online storefront.

4.   Upon information and belief, defendant Tech Sales LLC ("Tech Sales") is a limited liability company organized and existing under the laws of the state of Arizona, with its principal place of business at 329 West Melinda Lane, Phoenix, Arizona 85027, in this district.  The sole member of Tech Sales listed in its Articles of Organization is Daniel Parsons.  Plaintiff is informed and believes that Tech Sales conducts its sale of fusion splicers and other products from its websites, including www.efibertools.com.

5.   Plaintiff is informed and believes that Tech Sales transacts business throughout the U.S., including in this district, through its websites.

6.   Plaintiff is informed and believes that defendant Daniel Parsons ("Parsons") is an individual residing at 2052 East Topeka Drive, Phoenix, Arizona 85024, in this district, and that Parsons is the sole member of Tech Sales and the sole officer and director of SurplusEQ.

7.   Plaintiff is informed and believes that Parsons actively and knowingly participated in the acts of infringement, unfair competition, and false advertising described below, on his own behalf and on behalf of defendants SurplusEQ and Tech Sales.

8.   Plaintiff is informed and believes that defendant Jane Doe Parsons is the wife of defendant Daniel Parsons, and that at all relevant times, Parsons was acting on behalf and for the benefit of his marital community.

9.   This Court has jurisdiction over this action under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §1121; under 28 U.S.C. §§1331, 1338(a), 1338(b), and 1367(a); and under principles of pendent jurisdiction. This Court also has jurisdiction pursuant to 28 U.S.C §1332 as there is diversity of citizenship

2394447.1



between the parties and the matter in controversy exceeds the sum of seventy-five thousand dollars, exclusive of interest and costs.

10.     Jurisdiction over the Defendants is proper in that Defendants have sold and are selling and shipping infringing products or directing their sale, and are performing or directing acts of unfair competition, as alleged below, from Arizona.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c).

**BACKGROUND**

12.     Plaintiff AFL is an indirect, wholly-owned subsidiary of Fujikura Ltd. ("Fujikura"), doing business in North America.  AFL designs, manufactures, and sells fiber optic products and equipment for use in the telecommunications industry and provides related services.  It is the exclusive North American licensee for distribution of fusion splicers under the FUJIKURA mark.

13.     Fujikura is the world's leading manufacturer of fiber optic products and electronic components that sustain today's high information society. Fujikura was established in 1885 and has over 49,000 employees. Its products include optical transmission systems, network systems, power systems, coated wires, magnet wires, and fusion splicers. These products are sold under the famous FUJIKURA trademark.

14.     Defendant SurplusEQ is an Arizona corporation engaged in the business of purchasing and reselling various electronic equipment, particularly equipment used in the fiber optic industry such as fusion splicers and optical test equipment. Defendant sells new and used equipment to customers throughout the U.S. SurplusEQ has violated Plaintiff's trademark rights in the FUJIKURA mark in at least two distinct ways. First, SurplusEQ has imported into the U.S. and sold FUJIKURA brand fusion splicers that were designed to be sold in India and/or other countries outside the U.S., and has materially altered those fusion splicers.  Specifically, SurplusEQ, or others working on its behalf and with its knowledge, has removed memory chips from those fusion splicers, altered them, and replaced them so that the display shows serial numbers other than the original serial

3

2394447.1



numbers assigned at the Fujikura factory. Second, SurplusEQ, or others working on its behalf and with its knowledge, has altered the FUJIKURA brand fusion splicers by replacing the original physical serial numbers with different numbers to match the altered numbers in the memory chips. Plaintiff is informed and believes that SurplusEQ, or others working on its behalf and with its knowledge, changed those serial numbers in order to prevent Plaintiff from determining SurplusEQ's supplier of these counterfeit, "gray market" products.

15.     SurplusEQ's sale of altered products under the FUJIKURA mark is a deliberate attempt to trade on the goodwill of the FUJIKURA mark and damages the valuable trademark rights that Plaintiff and Fujikura have spent decades in developing and protecting. Defendants' actions are causing immediate and irreparable harm by creating consumer confusion concerning the FUJIKURA trademark, as to which Plaintiff has valuable exclusive rights in the U.S.

### FACTS SUPPORTING PLAINTIFF'S REQUESTED RELIEF

#### Genuine Fujikura Fusion Splicers

16.     Fujikura Ltd. is a corporation organized and existing under the laws of Japan with a principal place of business in Tokyo. Fujikura is the owner of trademark rights in the FUJIKURA mark for optical fiber splicers in the U.S.

17.     The FUJIKURA brand was created by Fujikura and is today one of the world's leading and most respected brands in the area of fiber optic products. Fujikura is well-known in the industry, particularly for its fusion splicers and as the pioneer in developing the first fusion splicer with a profile alignment system. FUJIKURA brand fusion splicers are known for their performance, productivity, and reliability. Fusion splicers are indispensable in the construction of optical communication networks.

18.     FUJIKURA brand fusion splicers are highly sophisticated products used to align two or more optical fibers and fuse the ends of two or more optical fibers using an electric arc. FUJIKURA fusion splicers are equipped with LCD monitors and pre-loaded,

4

2394447.1



copyrighted software, which together allow user-friendly operation of the products and visual inspection of splices.

19.    FUJIKURA brand fusion splicers, particularly the FSM-50S and its successor, the FSM-60S series, are among the best-selling products of their kind worldwide and in the U.S. FUJIKURA brand products are known for their high quality, unprecedented size, weight and ruggedness, and innovative wind protection design which can withstand a 30 MPH crosswind.

20.    The list price of a FSM-60S model FUJIKURA fusion splicer for sale in the U.S. is approximately $15,000.

21.    Fujikura invests heavily in research and development. It spends over $10 million annually on the research and development of its fusion splicers.

22.    To achieve goodwill and loyalty with its customers, Fujikura expends substantial resources to ensure the quality of its products through a rigorous quality control system.  Fujikura applies serial numbers to its products in order to facilitate quality control by tracking the origin of FUJIKURA brand products and performing repairs under warranty. Customers in the U.S. rely on the assumption that the FUJIKURA brand products they are purchasing are covered under Fujikura's warranty and that their pre-loaded software is properly licensed for use in the U.S.

23.    Fujikura exercises strict quality control over the production and distribution of its FUJIKURA brand fusion splicers. Plaintiff AFL is the only authorized distributor of FUJIKURA brand products in North America, is the only entity authorized to use the FUJIKURA mark in association with fusion splicers in North America, and is the only entity designated to perform "factory authorized" warranty service on FUJIKURA brand fusion splicers in North America.

24.    Because of Fujikura's and Plaintiff's exclusive and extensive use of the FUJIKURA mark, the mark has acquired enormous value, has become famous within the industry, and is recognized as identifying and distinguishing Fujikura and Plaintiff

2394447.1



exclusively and uniquely as the source of the high-quality fusion splicers and related products sold under the mark.

25.     Fujikura's FUJIKURA plus stylized F design trademark is registered with the United States Patent and Trademark Office for use with "optical fiber splicers" as Reg. No. 2,332,588.  The registration is valid, subsisting, and in full force and effect. Because it is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, it serves as conclusive evidence of Fujikura's ownership of the mark and of Fujikura's exclusive right to use and license use of the mark in commerce on or in connection with the goods identified in the registration, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).  A true and correct copy of the certificate of registration for U.S. Reg. No. 2,332,588 is attached hereto as Exhibit A.

26.     Fujikura's FUJIKURA plus stylized F color design mark is registered with the United States Patent and Trademark Office for use with "optical fibers; optical fiber fusion splicers; electric wires; electric cables" as Reg. No. 3,774,956.  A true and correct copy of the certificate of registration for U.S. Reg. No. 3,774,956 is attached hereto as Exhibit B.

<div align="center">Defendants' Infringing Fusion Splicers</div>

27.     Defendants have offered for sale and sold infringing FUJIKURA brand fusion splicers, including the FSM-60S model.  These products are altered and modified versions of the original FUJIKURA brand products, and are not authorized for use in the U.S., as described below.

28.     As manufactured and shipped by Fujikura, each FUJIKURA FSM-60S fusion splicer contains a display language control program within its memory chip, along with a mechanism designed to detect any alterations to the program in the memory chip and to stop the splicer automatically when alterations are detected, so as to avoid any alterations to the display language.  In an FSM-60S sold by Defendant SurplusEQ, the

2394447.1



1   program in the memory chip was altered before the unit was sold to the ultimate consumer

2   so that, among other things, it caused the LCD screen to display a false serial number.

3        29.   The physical serial number on the exterior of the FSM-60S unit sold by

4   SurplusEQ was altered and replaced with a false serial number.   The serial number

5   facilitates quality control by allowing a service provider to readily track the origin of

6   FUJIKURA products when performing repairs under warranty.

7        30.   The alterations to the memory chip and the serial number occurred after the

8   FSM-60S fusion splicer had left Fujikura's possession or control.

9        31.   The FUJIKURA brand products sold by SurplusEQ were intended by

10   Fujikura for sale outside the U.S. and do not carry a Fujikura warranty for service or repair

11   in the U.S. Accordingly, U.S. buyers of FUJIKURA brand products sold by SurplusEQ are

12   not entitled to receive Fujikura's warranty protection.

13        32.   FUJIKURA brand fusion splicers such as the FSM-60S splicers sold by

14   Defendants are operated in part by copyrighted software owned by Fujikura and licensed

15   to AFL, which software is stored in a memory chip in the splicer.   The copy of the

16   software provided with each unit is licensed for use in the country where that unit is

17   initially to be sold.   For example, a splicer that Fujikura ships to Plaintiff for resale in the

18   U.S. incorporates software licensed for use in the U.S. and a splicer that Fujikura ships to a

19   distributor in India for resale in India incorporates software licensed for use in India.

20        33.   Fujikura has filed an application with the U.S. Register of Copyrights to

21   register the copyright in the software that is pre-loaded on the FUJIKURA brand fusion

22   splicer models FSM-60S, FSM-60R, FSM-18S, and FSM-18R.

23        34.   Fujikura has granted Plaintiff the exclusive right to distribute the

24   copyrighted software that is pre-loaded on the FUJIKURA brand fusion splicer models

25   FSM-60S, FSM-60R, FSM-18S, and FSM-18R in the U.S., and to authorize others to do

26   so.   Plaintiff has not granted any Defendant the right to distribute that software.

27

28

2394447.1

35.     Goods that are made by a foreign manufacturer and legitimately sold abroad under a trademark, but which have been imported into the U.S. without the manufacturer's permission and sold in competition with the goods of the trademark owner or its licensees, are referred to in the trade as "gray market" goods. Upon information and belief, SurplusEQ directly or indirectly acquired gray market FUJIKURA brand fusion splicers from overseas distributors who were not authorized to sell such products in the U.S.  Upon information and belief, the physical serial numbers were removed from some or all of these products, substitute serial numbers were attached in their place, and the serial numbers in the memory chips were altered, in order to prevent Plaintiff and Fujikura from tracing these unauthorized fusion splicers back to the responsible distributors.  Material changes to the goods as described herein rendered those goods counterfeit.

36.     The FUJIKURA brand fusion splicers sold by SurplusEQ were altered so that they are no longer the same fusion splicers sold by Fujikura. The memory chips have been removed and replaced, and in the process have been soldered in an inferior and damaging manner.  An example of this damaging installation was the inferior soldering of a memory chip, lack of condensation coating, and heat damage to other components of the printed circuit board on a Fujikura FSM-60S sold by SurplusEQ.

37.     Plaintiff is informed and believes that SurplusEQ sold counterfeit FUJIKURA brand fusion splicers as "new" with knowledge that they had been materially altered and were not licensed for use in the U.S.

38.     Plaintiff is informed and believes that defendant TechSales obtained counterfeit FUJIKURA brand fusion splicers that were modified, unlicensed, and infringing as described in paragraphs 27-36 above, either directly from overseas distributors or from SurplusEQ, and offered those infringing fusion splicers for sale in the U.S. through its website at www.efibertools.com with knowledge that the counterfeit FUJIKURA brand fusion splicers had been materially altered and were not licensed for use in the U.S.

2394447.1

LEWIS
AND
ROCA
LLP
LAWYERS

Case 2:11-cv-01086-DGC   Document 1   Filed 05/31/11   Page 9 of 19

39. The removal of the serial numbers and inferior reinstallation of altered memory chips degrade the product's appearance and performance. Upon information and belief, Defendants either intentionally altered these products or distributed these products with knowledge that they had been altered. The removal of the serial numbers, the removal and defective and inferior reinstallation of memory chips, the lack of a manufacturer's warranty, and the incorporation of software that is not licensed for use in the U.S. constitute material differences as compared to the genuine FUJIKURA brand fusion splicers that are distributed by AFL in the U.S. The FUJIKURA brand fusion splicers sold by Defendants are, therefore, counterfeit and infringing products under the U.S. trademark law.

40. Plaintiff is informed and believes that defendant Parsons acted as the principal decision maker for both SurplusEQ and Tech Sales in connection with the counterfeit FUJIKURA brand fusion splicers, actively and knowingly caused the unauthorized alteration of the FUJIKURA brand fusion splicers by those parties or caused those parties to obtain altered fusion splicers with knowledge that they had been altered, and actively directed the advertising and sale of those products with knowledge that they were infringing, counterfeit, and not licensed for use in the U.S.

41. Defendants' unlawful actions commenced many years after Fujikura began using the marks at issue in commerce in the U.S., many years after those marks had achieved worldwide fame, many years after AFL was established as the exclusive North American distributor of FUJIKURA brand fusion splicers, and many years after the FUJIKURA mark was registered in the U.S. Patent and Trademark Office.

42. Defendant SurplusEQ has falsely advertised its Fujikura products as "new", purchased directly from Fujikura, and covered by a manufacturer's warranty when, in fact, they are not. In an Internet "blog" entry dated July 21, 2009, Defendant SurplusEQ stated:

> when it comes to new fusion splicers companies like www.SurplusEQ.com buy direct from the manufacturer and don't have to be an authorized seller. Also be aware at [sic] the prices you will pay are lower because we do not do [sic]

2394447.1



through a middle man, therefore resulting in a lesser price you pay for the same machine and actually you get the whole kit. Not to mention a full Manufacturers Warranty.

Those representations are false in that (1) SurplusEQ does not buy fusion splicers directly from Fujikura; (2) SurplusEQ instead buys from "middle men," namely third parties in countries other than the U.S.; (3) the counterfeit imports do not come with a full manufacturer's warranty and are not eligible for manufacturer's authorized warranty service in the U.S.; and (4) the counterfeit imports are not "the same machine" as that sold by an authorized reseller in that they have been altered and incorporate software that is not licensed for use in the U.S., and are therefore counterfeit goods.  Plaintiff is informed and believes that defendant Parsons either wrote or approved such statements with knowledge that they were false.

43.     Defendant Tech Sales has advertised its FUJIKURA brand fusion splicers as "new and unused" and "[g]uaranteed not modified in any way."  In fact, Plaintiff is informed and believes, those statements are false in that those fusion splicers have been modified as described above. Plaintiff is informed and believes that defendant Parsons either wrote or approved such statements with knowledge that they were false.

44.     Defendants have falsely advertised their Fujikura products in a manner that causes consumers to believe that an affiliation exists between Fujikura and Defendants, by making statements such as that on SurplusEQ's blog that "companies like www.SurplusEQ.com buy direct from the manufacturer."

45.     Defendants' false statements are intended to, and do, give consumers the impression that Defendants are offering the same FUJIKURA brand product as is offered by AFL when in fact that is not true.

46.     Defendants' altered and unauthorized FUJIKURA brand fusion splicers are counterfeit goods that are likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that these products were authorized by or associated with Fujikura and are the same as the authorized units offered by AFL. The likelihood of

10

2394447.1



1    confusion, mistake and deception caused by Defendants' unauthorized products is causing

2    irreparable harm to Plaintiff.

3         47.   Purchasers and prospective purchasers viewing Defendants' unauthorized

4    FUJIKURA brand fusion splicers and perceiving a defect, lack of quality, or any

5    impropriety are likely to mistakenly attribute them to Fujikura and/or to Plaintiff.   In

6    addition, due to the expensive, highly-specialized and technical nature of these products,

7    Defendants' sale of altered, counterfeit FUJIKURA brand devices upon which there is no

8    certification of quality poses a significant risk to the goodwill in the FUJIKURA mark and

9    to the high regard in which the mark is held by potential buyers of these devices. By

10   causing such a likelihood of confusion, mistake, deception, and potential injury,

11   Defendants are inflicting irreparable harm to the goodwill in the FUJIKURA mark, which

12   irreparably injures Plaintiff as the exclusive authorized distributor of FUJIKURA brand

13   fusion splicers in the U.S. with exclusive rights to use of the FUJIKURA mark.

14        48.   Defendants' unlawful conduct will continue to harm Plaintiff and deceive

15   the public during the pendency of the case unless the Court issues a preliminary injunction

16   to prevent such unlawful conduct.

17        49.   Upon information and belief, Defendants knowingly and willfully use

18   Fujikura's marks and sell the false and modified FUJIKURA brand fusion splicers with

19   the deliberate intent to ride on the fame and goodwill in the FUJIKURA brand and in a

20   deliberate attempt to create a false impression as to the source, sponsorship, and condition

21   of Defendants' products.   Defendants' conduct threatens immediate and irreparable injury

22   to the value of the FUJIKURA mark and the public's confidence in the high quality of

23   products sold under the FUJIKURA mark.

24        50.   Defendants' conduct is intentionally fraudulent, malicious, willful and

25   wanton.

26

27

28

2394447.1

LEWIS
AND
ROCA
——LLP——
L A W Y E R S

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FIRST CLAIM FOR RELIEF
### FEDERAL UNFAIR COMPETITION, FALSE DESCRIPTION, FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

51.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 50 above, and incorporates them herein by reference.

52.     Defendants' sale and distribution of their altered, counterfeit products bearing the FUJIKURA mark is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' fusion splicers. As a result of Defendants' unauthorized use of Fujikura's federally registered mark, the public is likely to believe that Defendants' goods have been fully manufactured and approved by Fujikura.

53.     Defendants' unauthorized use of altered products bearing the FUJIKURA mark falsely represents Defendants' FUJIKURA branded products as emanating from or being authorized by Fujikura and Plaintiff and places the quality of products bearing the FUJIKURA mark beyond the control of Fujikura or Plaintiff and deprives Plaintiff of the ability to maintain the prestige and reputation of the FUJIKURA brand.

54.     Defendants' infringement of the registered FUJIKURA mark is willful and is intended to reap the benefit of the goodwill in the FUJIKURA marks.

55.     The removal of the serial numbers and substitution of false serial numbers, the removal and defective reinstallation of the memory chips, and the sale of counterfeit FUJIKURA brand fusion splicers purporting to be new but in fact altered, without a manufacturer's warranty, and with software not licensed for use in the U.S., render the Defendants' "Fujikura" products materially different from Plaintiff's authentic FUJIKURA brand fusion splicers authorized for sale in the U.S. and counterfeit.

56.     Defendants' unauthorized sale in the U.S. of counterfeit FUJIKURA brand fusion splicers is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' gray market FUJIKURA brand fusion splicers. As a result of Defendants' unauthorized use of the federally registered FUJIKURA mark, the public is

2394447.1





LEWIS AND ROCA LLP LAWYERS

likely to believe that Defendants' altered goods have been approved and authorized by Fujikura and/or AFL.

57. Defendants' unauthorized sale in the U.S. of counterfeit, modified, and unlicensed FUJIKURA brand fusion splicers as new products, as bought directly from the manufacturer and not through "middle men," and as the same as authorized imports constitutes a false designation of origin and a false description or representation that Defendants' sale of such products is authorized by Fujikura and/or Plaintiff, and is likely to confuse consumers.

58. Defendants are using the FUJIKURA mark with full knowledge that the mark is associated exclusively with Fujikura and Plaintiff; that Plaintiff is the exclusive authorized U.S. distributor for such products; that the FUJIKURA mark is registered and that Defendants' products are counterfeit; and that the FUJIKURA mark exclusively designates authentic, genuine, duly licensed, and non-modified FUJIKURA brand products manufactured under Fujikura's excellent and high-quality standards. Defendants' acts of unfair competition are willful, deliberate and are intended to reap the benefit of the goodwill and reputation associated with the FUJIKURA mark.

59. Defendants' acts of unfair competition cause substantial harm to Plaintiff AFL as the exclusive licensee of rights to sell new fusion splicers in the U.S. under the FUJIKURA mark.

60. Defendants' sale and distribution of counterfeit, modified FUJIKURA brand products violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

61. Defendants' conduct is causing immediate and irreparable injury to Plaintiff and to its reputation and to the goodwill in the FUJIKURA mark, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

LEWIS
AND
ROCA
—LLP—
L A W Y E R S

## SECOND CLAIM FOR RELIEF
## FEDERAL FALSE ADVERTISING
### (15 U.S.C. § 1125(a))

62.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 61 above and incorporates them herein by reference.

63.     Defendants' advertisement and promotion of counterfeit, unauthorized, unlicensed, and modified FUJIKURA brand fusion splicers as "new," as bought "direct from the manufacturer," as carrying a "full Manufacturers Warranty," as "new and unused" and as "[g]uaranteed not modified in any way" constitutes false descriptions or representations of fact as to the nature, characteristics, and qualities of the goods, including that Defendants' products are equivalent to FUJIKURA brand fusion splicers sold by authorized U.S. resellers, that Defendants' products are unmodified, and that Defendants' sale of such products is authorized by Fujikura and/or by Plaintiff.  Such statements further falsely imply that the pre-loaded software required to use Defendants' counterfeit FUJIKURA brand fusion splicers is authorized for distribution by Defendants and for use in the U.S.

64.     Such false statements are likely to confuse a substantial portion of the intended purchasers of Defendants' goods and are material in that they are likely to influence the deceived customers' purchasing decisions, and Defendants intended them to influence those decisions.

65.     Defendants introduced those false statements into interstate commerce by way of, among other things, their websites and the SurplusEQ blog.

66.     The resulting deception causes substantial harm to Plaintiff as the exclusive licensee of rights to sell new fusion splicers in the U.S. under the FUJIKURA mark, in that it diverts sales from Plaintiff's authorized products to Defendants' counterfeit, unauthorized products and in that it threatens the goodwill associated with the FUJIKURA trademark.

2394447.1



67.     Defendants' false advertising of counterfeit, modified FUJIKURA brand products violates Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

68.     Defendants' conduct is causing immediate and irreparable injury to Plaintiff and to its reputation and to the goodwill in the FUJIKURA mark, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION

69.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 68 above and incorporates them herein by reference.

70.     Defendants' sale and distribution of the counterfeit, modified, altered, and unlicensed FUJIKURA brand products constitutes common law unfair competition.

71.     The aforesaid conduct of Defendants is causing immediate and irreparable injury to Plaintiff and to the goodwill and reputation associated with the FUJIKURA mark, and will continue both to damage Plaintiff and to deceive the public unless enjoined by this Court. Plaintiff has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT

72.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 71 above and incorporates them herein by reference.

73.     Upon information and belief, Fujikura is the owner of the copyright in the software that is pre-loaded on the FUJIKURA brand fusion splicer models FSM-60S, FSM-60R, FSM-18S, and FSM-18R, as a work made for hire or otherwise.

74.     AFL is the exclusive licensee of the right to distribute that software in the U.S. pursuant to a written license agreement from Fujikura.

75.     Defendants' distribution in the U.S. of fusion splicers incorporating that software is without authorization from AFL and constitutes a violation of AFL's exclusive

2394447.1



right to distribute copies of the copyrighted work to the public under the license agreement and Section 106 of the United States Copyright Act, 17 U.S.C. §106(3).

76.     Unless future infringements are enjoined by this Court, AFL will suffer irreparable injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

1.     That an injunction be issued enjoining Defendants; their employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, and assigns; and all those in active concert and participation with Defendants, or any of them, from:

a) imitating, copying, or making unauthorized use of the FUJIKURA mark, including the marks set forth in U.S. Registrations No. 2,332,588 and 3,774,956, or any other marks owned by Fujikura and exclusively licensed to Plaintiff in the U.S. (collectively the "FUJIKURA Marks");

b) importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any of the FUJIKURA Marks;

c) using any of the FUJIKURA Marks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend to relate or connect, such product in any way to Plaintiff or to any goods sold, manufactured, sponsored or approved by or connected with Fujikura;

d) using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any infringing product distributed or sold by any Defendant is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

2394447.1



e) engaging in any other activity constituting unfair competition with Plaintiff, or constituting infringement of the FUJIKURA Marks;

f) causing or participating in any alteration or modification of any product bearing any of the FUJIKURA Marks, including the removal or substitution of any memory chip in said product or causing any alteration to said product that changes the language displayed on said product;

g) causing or participating in the removal, covering, obscuring, altering, replacing, or otherwise defacing a serial number or other identifying code on any FUJIKURA-brand product or importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any FUJIKURA-brand product with a removed, obscured, hidden, replaced, or altered serial number or other identifying code.

h) disposing of, destroying, altering, moving, removing, concealing, tampering with or in any manner secreting any business records (including computer records) of any kind, including invoices, purchase orders, correspondence, books of account, receipts or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, or distribution of any merchandise bearing any of the FUJIKURA Marks;

i) directly or indirectly informing any of Defendants' sources or suppliers of any merchandise bearing any of the FUJIKURA Marks of this action or of any of Plaintiff's claims herein; or instructing, assisting, enabling, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (h), above; or

j) infringing, directly or indirectly, AFL's interest in the copyright in the Fujikura fusion splicer operating software, and specifically enjoining Defendants from reproducing, creating derivative works of, or distributing the copyrighted work, including by

2394447.1



distributing Fujikura fusion splicers incorporating the software that were not authorized to be sold in the U.S.

2.    Directing that Defendant make available to Plaintiff for review, inspection and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents concerning all transactions relating to the purchase, sale, alteration, and unauthorized use of products bearing the FUJIKURA Marks and provide Plaintiff the names, addresses and all other contact information in its possession (e.g., telephone numbers, fax numbers) for the source(s) of such products, including all distributors and/or suppliers.

3.    Directing that Defendants deliver to Plaintiff's counsel for destruction all signs, products, packaging, promotional material, advertising material, catalogs and any other item that bears, contains or incorporates any of the FUJIKURA Marks.

4.    Requiring Defendants to account for and pay over to Plaintiff three times the profits realized by Defendants from their infringement of the FUJIKURA Marks and their unfair competition with Plaintiff pursuant to 15 U.S.C. §§ 1117(a) and 1117(b).

5.    Awarding Plaintiff its actual damages arising out of Defendants' acts of willful unfair competition, trebled pursuant to 15 U.S.C. §§ 1117(a) and 1117(b) and other applicable law.

6.    Awarding Plaintiff statutory damages pursuant to 15 U.S.C. §1117(c).

7.    Awarding to Plaintiff interest, including pre-judgment interest, on the foregoing sums.

8.    Awarding to Plaintiff its costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. §§ 1117(a) and 1117(b) and other applicable law.

9.    Awarding Plaintiff exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate.

2394447.1



10.     Awarding to Plaintiff its damages incurred as a result of Defendants' violation of Plaintiff's exclusive rights in the copyright, including Defendants' profits and Plaintiff's losses on infringing sales.

11.     Directing such other action as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any goods or services offered, advertised or promoted by or on behalf of Defendants are authorized by Fujikura or Plaintiff, or related in any way to Plaintiff's products.

12.     Directing that Defendants file with the Court and serve upon Plaintiff's counsel, within thirty days after entry of judgment, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above.

13.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on all issues so triable.


RESPECTFULLY SUBMITTED this 31st day of May, 2011.

**LEWIS AND ROCA LLP**


By    Sean D. Garrison
       Sean D. Garrison
       Shane E. Olafson
       *Attorneys for Plaintiff*

2394447.1