**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AFL Telecommunications LLC, | No. CV-11-1081-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| Fiberoptic Hardware, LLC; and George Kyrias, | |
| Defendants. | |

AFL Telecommunications LLC is a wholly-owned subsidiary of Fujikura Ltd., a leading manufacturer of fiber optic products. AFL is the exclusive licensee for distribution of Fujikura-brand fusion splicers in North America. Fiberoptic Hardware, LLC ("FOH") is a New Hampshire-based reseller of fiber optic equipment. FOH, according to AFL, purchases Fujikura splicers intended for use overseas, modifies the products, and resells the "gray market" units in the United States.

AFL filed suit against FOH and its principal, George Kyrias, in May 2011. The complaint asserts claims for unfair competition and false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), common law unfair competition, and copyright infringement. Doc. 1. Plaintiff seeks injunctive relief and an award of actual, treble, and punitive damages. *Id.*

Plaintiff, pursuant to Rule 65 of the Federal Rules of Civil Procedure, has filed a motion for a preliminary injunction. Doc. 6. Defendants have filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and a motion to dismiss the

copyright infringement claim under Rule 12(b)(6). Docs. 19, 20. The motions are fully briefed. For reasons stated below, the Court will dismiss the claims asserted against Kyrias, dismiss the copyright infringement claim, and enter a preliminary injunction against FOH on the Lanham Act claims.[1]

## I. Personal Jurisdiction.

In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that the exercise of personal jurisdiction is proper. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010). Where, as here, the motion will be resolved before discovery has been conducted and without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion, that is, the plaintiff "need *only* demonstrate facts that *if true* would support jurisdiction over the defendant." *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995); emphasis in original). In deciding whether this burden has been met, "the uncontroverted allegations of [the] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

The complaint contains no factual allegations, Defendants contend, showing that they have the requisite minimum contacts with Arizona to support the exercise of jurisdiction over them. Docs. 19, 29. Plaintiff argues that Defendants' contacts with Arizona are sufficient to subject each of them to general jurisdiction and specific jurisdiction in Arizona. Doc. 27.

### A. FOH.

A court may, consistent with principles of constitutional due process, exercise general jurisdiction over a non-forum defendant as to any cause of action where the

---

[1] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

defendant has certain minimum contacts with the forum state, that is, where the defendant's activities in the forum state are substantial or continuous and systematic "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 444-47 (1952); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). This standard is met where "the defendant's contacts [are] of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff has made a prima facie showing of general jurisdiction over FOH. Arizona is home to one of the two sales and service centers FOH operates. Doc. 6-2 at 14. The company has contracted with two sales representatives in Arizona – one in May 2010 and the other in July 2010 (Doc. 21 at 34, 40) – and has leased office space in Arizona for at least eight months (*id.* at 4). Resolving factual disputes in favor of Plaintiff, as the Court must on the instant motion, *see Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006), the Court finds that FOH not only has contacts that approximate physical presence in Arizona, it *has* a physical presence here. Stated differently, FOH has substantially more than a mere "casual presence" in Arizona and has engaged in more than "single or isolated items of activities in [the] state[.]" *Int'l Shoe*, 326 U.S. at 317.

It is worth noting that the claims asserted against FOH do not arise from "dealings entirely distinct" from its contacts with Arizona. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006). Rather, selling fiber optic equipment – including the fusion splicers at issue here – is FOH's "core business." *Id.*

FOH cites *In re Rationis Enterprises, Inc.*, 261 F.3d 264 (2d Cir. 2001), for the proposition that the existence of a sales office in the forum state does not automatically confer general jurisdiction. Doc. 19 at 5. FOH claims that it has sold no Fujikura splicer

in Arizona, but the company offers for sale many fiber optic products other than Fujikura splicers at its Arizona facility, and the company's website makes clear that there are certified technicians at that facility who provide fiber optic repair, cleaning, and calibration services. Doc. 6-2 at 6-7; http://fiberoptichardware.com (last visited Sept. 9, 2011). FOH does not assert that it has sold or serviced no product in Arizona. Plaintiff alleges that FOH has sold and otherwise directed the sale of fusion splicers and other fiber optic equipment from Arizona. Doc. 1 ¶¶ 3, 7. Accepting those uncontroverted factual allegations as true, it is clear that the Court may exercise general jurisdiction over FOH consistent with principles of constitutional due process and Arizona's long-arm statute, Ariz. R. Civ. P. 4.2(a). *See Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987) (Arizona's long-arm statute is coextensive with the permissible limits of federal due process); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997) (same).

FOH's reliance on *Coastal Video Communications Corp. v. Staywell Corp.*, 59 F. Supp. 2d 562 (E.D. Va. 1999), is misplaced. Docs. 19 at 5, 29 at 3. Noting that information relevant to the amount of sales generated in the forum state was uniquely within the defendant's control, the district court in *Coastal Video* declined to dismiss for lack of general jurisdiction pending further discovery by the plaintiff. 59 F. Supp. 2d at 572. *Coastal Video* does not support dismissal of the claims asserted against FOH.

Because Plaintiff has demonstrated minimum contacts with Arizona sufficient to confer general jurisdiction over FOH, the burden shifts to FOH to present a "compelling case" that the exercise of jurisdiction would, in fact, be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The reasonableness determination considers five factors: (1) the burden on the defendant, (2) the forum state's interest in the dispute, (3) the importance of the chosen forum to the plaintiff, (4) the most efficient forum for resolution of the dispute, and (5) the shared interest of the states in furthering fundamental social policy. Doc. 19 at 6-7; *Asahi Metal Indus. Co. v.*

*Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987). Balancing these factors, the Court concludes that FOH "has failed to meet its burden of demonstrating a compelling case of unreasonable jurisdiction." *Tuazon*, 433 F.3d at 1175.

FOH operates a facility in Arizona and has engaged Arizona counsel. Given modern advances in technology and communications, and the availability of electronic case filing, the burden on FOH from litigating this action in Arizona is not a heavy one. *See Centrifugal Force, Inc. v. Softnet Communication, Inc.*, No. 08 Civ. 5463 (CM) (GWG), 2009 WL 1059647, at *8 (S.D.N.Y Apr. 17, 2009); *Roaring Fork Capital SBIC, L.P. v. ATC Healthcare, Inc.*, No. 10-cv-00338-MSK-CBS, 2011 WL 1258504, at *7-8 (D. Colo. Mar. 29, 2011). While Arizona may not have a strong interest in the dispute, it serves as an efficient forum for resolving the dispute given the presence of evidence and witnesses in the State. Plaintiff's choice of forum cannot be said to be arbitrary or otherwise unimportant given that Arizona is one of only two states in which FOH conducts operations and FOH is alleged to have sold infringing goods to an Arizona company. The fifth factor, that is, the shared interest of the states in furthering fundamental social policy, does not appear to be relevant.

When compared with the burden on Plaintiff, FOH asserts, the burden on FOH to defend this lawsuit in Arizona is "significant." Doc. 19 at 7. This bald assertion does not satisfy FOH's "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Ballard*, 65 F.3d at 1500. Stated differently, FOH has failed to show that the relevant factors "are so lopsided in [its] favor as to render the exercise of jurisdiction contrary to 'fair play and substantial justice.'" *Unicru, Inc. v. Brenner*, No. Civ. 04-248-MO, 2004 WL 785276, at *11 (D. Or. Apr. 13, 2004).

In summary, Plaintiff has made the requisite prima facie showing of general jurisdiction over FOH, and FOH has not established that the exercise of personal jurisdiction will violate principles of due process. The Court will deny the motion to dismiss in this regard. Given this ruling, the Court need not decide whether it has

specific jurisdiction over FOH.

### B. Kyrias.

Personal jurisdiction over individual corporate officers may not be based on jurisdiction over the corporation itself, *see Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989), but their status as corporate officers "does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). "Each defendant's contacts with the forum state must be assessed individually." *Id.* The relevant inquiry is whether, given the corporate officer's own contacts with the forum state, he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiff has identified only two contacts with Arizona on the part of Kyrias: one phone call and one email to an Arizona company. These isolated contacts are insufficient to approximate "physical presence" in Arizona. *Bancroft*, 223 F.3d at 1086. Plaintiff has made no showing, prima facie or otherwise, of general jurisdiction over Kyrias. *See Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330-31 (9th Cir. 1984) (no general jurisdiction over corporate officer despite his communications with, visits to, and solicitation of a contract in the forum).

Under this Circuit's three-part test, specific jurisdiction exists only where (1) the defendant performed some act by which he purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposefully directed tortious conduct at the forum that had effects in the forum, (2) the plaintiff would not have filed suit "but for" the defendant's forum-related activities, and (3) the exercise of jurisdiction would be reasonable. *Bancroft*, 223 F.3d at 1086-88; *see also Calder*, 465 U.S. at 789-90; *J. McIntyre Mach., Ltd. v. Nicastro*, --- U.S. ----, 131 S. Ct. 2780, 2787-88 (2011).

With respect to the first part of the specific jurisdiction test, Plaintiff has presented insufficient facts to establish purposeful availment or purposeful direction on the part of

Kyrias. "A defendant has purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created continuing obligations between himself and the residents of the forum.'" *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Burger King*, 471 U.S. at 475-76). Purposeful direction cannot be found where the defendant has engaged in "mere untargeted negligence"; instead, the defendant must be found to have committed an intentional tortious act "expressly aimed" at the forum. *Calder*, 465 U.S. at 789; *see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206-07 (9th Cir. 2006).

FOH sold several Fujikura splicers to an Arizona company, Sana Trading and Services ("Sana"), but Kyrias did not reach out to Sana to make the sale. Instead, Sana's chief operating officer, Taiby Sabuwala, contacted FOH and received a written quotation from sales person Anna Bakker. Doc. 6-10 at 2, 22-23. Mr. Sabuwala's initial contact with FOH is irrelevant to the question whether Kyrias purposefully availed himself of the benefits of the forum. In order "'to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts,'" the purposeful availment inquiry focuses not on the conduct of third-parties, but on the defendant's own affirmative conduct. *Gray*, 913 F.2d at 760 (citation omitted).

While Kyrias had a telephone conversation with Mr. Sabuwala about the fusion splicers (Doc. 21-1 at 7) and sent him an email offering to accept their return and resell them on a consignment basis (Doc. 6-10 at 3), these limited contacts are not sufficient to show purposeful availment on the part of Kyrias. It cannot fairly be said that he engaged in "significant activities" within Arizona or otherwise created "continuing obligations" with forum residents such that he invoked the benefits and protections of the State's laws. *Gray*, 913 F.2d at 760. This Circuit has made clear that use of the telephone and email "'simply do[es] not qualify as purposeful activity invoking the benefits and protection of the forum state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (citations

- 7 -

omitted).  In short, Kyrias' "attenuated contacts" with Arizona are legally insufficient to establish purposeful availment.  *Gray*, 913 F.2d at 761; *see Peterson v. Kennedy*, 771 F.2d at 1262; *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (noting that the first prong of the specific jurisdiction test involves a "qualitative evaluation" of the defendant's contacts with the forum).

Nor are the contacts sufficient to establish purposeful direction.  No evidence suggests that Kyrias targeted Sana or Mr. Sabuwala for tortious activity or otherwise engaged in wrongful conduct "expressly aimed" at Arizona.  *Bancroft*, 223 F.3d at 1087.  Sana and Mr. Sabuwala have asserted no intentional tort claim against Kyrias, and no such claim is apparent from a review of Mr. Sabuwala's declaration.  Doc. 6-10 at 2-5.

In summary, Plaintiff has failed to make a prima facie showing of purposeful availment or purposeful direction on the part of Kyrias.  Nor has Plaintiff shown, or even argued, that but for Kyrias' contacts with Arizona, Plaintiff would not have filed suit.  Because Plaintiff has failed to satisfy the first two prongs of the specific jurisdiction test, Kyrias need not show that the exercise of jurisdiction over him would be unreasonable.  *See Peterson*, 771 F.2d at 1261 (each of the three prongs of the specific jurisdiction test must be met to exercise personal jurisdiction over a non-resident defendant).  The claims asserted against Kyrias will be dismissed for lack of personal jurisdiction.

## II. The Copyright Infringement Claim.

Plaintiff purports to assert a copyright infringement claim in count four of the complaint.  Doc. 1 ¶¶ 67-71.  FOH, pursuant to Rule 12(b)(6), has filed a motion to dismiss count four for failure to state a claim to relief.  Doc. 20.  Plaintiff opposes the motion.  Doc. 23.

When analyzing a complaint for failure to state a claim to relief, the well-pled factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'"  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted).  Legal conclusions couched as factual allegations "are not entitled to the

assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore are "'insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, and satisfy the pleading requirements of Rule 8(a), the pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To establish a claim for copyright infringement, the plaintiff must demonstrate valid ownership in a copyright and violation of an exclusive right granted to copyright holders. 17 U.S.C. §§ 106, 501; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). With respect to the first element, the plaintiff must establish ownership of something original and copyrightable. A work is original where it has been independently created by the author (as opposed to copied from other works) and possesses at least some degree of creativity. *Feist Publ'ns, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 346 (1991).

FOH argues, among other things, that the complaint fails to plead sufficient facts about copyright ownership to state a plausible claim to relief. Doc. 20 at 3, 21 at 7. The Court agrees.

The complaint alleges generally that certain fusion splicers sold by FOH are "operated in part by copyrighted software owned by Fujikura" (Doc. 1 ¶ 28), but the alleged copyrighted software is not otherwise described. The complaint further alleges, "[u]pon information and belief," that Fujikura is the owner of the purported copyright in the software "as a work made for hire or otherwise." *Id.* ¶ 68.

Those bare allegations of copyright ownership do "no more than ask the Court to infer the possibility of misconduct by Defendants." *Curington v. UMG Recordings, Inc.*, No. 1:10-cv-890, 2011 WL 3568278, at *3 (M.D.N.C. Aug. 12, 2011). Because the complaint's factual allegations do not possess enough "heft" to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 557, the complaint "has alleged – but it

has not 'shown' – 'that [Plaintiff] is entitled to relief'" for copyright infringement, *Iqbal*, 129 S. Ct. at 1950.  FOH notes, correctly, that this is not a case where the facts necessary to state a valid claim to relief are in the defendant's sole possession.  Doc. 20 at 3; *see Strand v. John C. Lincoln Health Network, Inc.*, No. CV-10-02112-PHX-NVW, 2011 WL 1253408, at *3 (D. Ariz. Mar. 31, 2011).  The motion to dismiss the copyright infringement claim (count four) will be granted.  *See Curington*, 2011 WL 3568278, at *4; *Universal Surface Tech., Inc. v. Sae-A Trading Am. Corp.*, No. CV 10-6972 (CAS) (PJWx), 2011 WL 281020, at *6 (C.D. Cal. Jan. 26, 2011) (dismissing copyright claim where the complaint contained "'nothing more than labels and conclusions, and a formulaic recitation of the elements of a cause of action'") (quoting *Twombly*, 550 U.S. at 555).

## III.    Preliminary Injunctive Relief.

Plaintiff seeks a preliminary injunction with respect to the Lanham Act claims asserted in counts one and two and the copyright infringement claim asserted in count four.  Doc. 6.  To obtain preliminary injunctive relief under Rule 65, Plaintiff must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  The test includes a sliding scale.  If Plaintiff shows that the balance of hardships will tip sharply in its favor, it need not make as strong a showing of the likelihood of success on the merits – the existence of serious questions will suffice.  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

Because the complaint fails to state a claim to relief for copyright infringement, Plaintiff has not demonstrated a likelihood of success or serious questions with respect to that claim.  The motion for a preliminary injunction will be denied in this regard.  *See Davila v. BAC Home Loans Servicing, LP*, No. 2:10-cv-02252-ECR-GWF, 2011 WL 3159146, at *2 (D. Nev. July 26, 2011) (denying request for a preliminary injunction

where the complaint failed to state a claim to relief).

### A. The Balance of Hardships and the Public Interest.

With respect to the Lanham Act claims, the third and fourth elements of the test for preliminary injunctive relief have been satisfied. Plaintiff argues (Doc. 6 at 16), and FOH does not dispute, that "the public interest is usually the right of the public not to be deceived or confused." *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, No. CIV. 2:10-2751, 2011 WL 221651, at *13 (E.D. Cal. Jan. 24, 2011). Nor does FOH dispute that the balance of equities tips strongly in Plaintiff's favor. *See* Doc. 6 at 15-16. To obtain a preliminary injunction, therefore, Plaintiff need only show that the Lanham Act claims raise serious questions and that it is likely to suffer irreparable harm in the absence of preliminary relief. *Alliance for Wild Rockies*, 632 F.3d at 1134-35.[2]

### B. Serious Questions.

Plaintiff brings two claims against FOH under Section 43 of the Lanham Act. The first alleges unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A), and the second alleges false advertising in violation 15 U.S.C. § 1125(a)(1)(B). Doc. 1 ¶¶ 46-63.

To prevail on the claim for unfair competition, Plaintiff must show that use of the "Fujikura" mark by FOH is likely to cause consumer confusion. In the context of "gray market" goods – that is, foreign-manufactured goods bearing a valid United States trademark that are imported without the consent of the mark holder – "the likelihood of confusion relates to the existence of material differences between the allegedly infringing good and the [mark holder's] product." *Hokto Kinoko Co. v. Concord Farms, Inc.*, No.

---

[2] Contrary to FOH's assertion (Doc. 21 at 5-6 & n.2), Plaintiff need not demonstrate a "strong" or "high" likelihood of success on the merits. Under pre-*Winter* Ninth Circuit precedent, a preliminary injunction could issue "based only on the 'possibility' of irreparable harm" where the plaintiff also demonstrated a "strong" likelihood of prevailing on the merits. *Winter*, 555 U.S. at 21. Because, after *Winter*, a plaintiff seeking preliminary relief must demonstrate that irreparable harm is "likely," not merely possible, the plaintiff need not also demonstrate a strong likelihood of success. 555 U.S. at 21; *see Hagos v. MTC Fin., Inc.*, No. 11-cv-01272-GMN-RJJ, 2011 WL 3471153, at *2 (D. Nev. Aug. 8, 2011) (*Alliance* makes clear that "the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*").

- 11 -

CV 10-1384 RSWL (PLAx), 2011 WL 3625382, at *5 (C.D. Cal. 2011); *see K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 285 (1988). Although gray market goods "are authentic in the sense that they originated with the mark owner, they are not considered 'genuine' with the meaning of the Lanham Act if they are not authorized for sale in the United States and they differ materially from those that are." *Zip Int'l Group, LLC v. Trilini Imports, Inc.*, No. 99-CV-2437 (JG)(VVP), 2010 WL 648696, at *3 (E.D.N.Y. Feb. 22, 2010). "The sale of such goods is actionable by the exclusive United States licensee not because consumers may be confused about the manufacturer of the goods, but because consumers may unwittingly purchase the goods on the basis of the domestic markholder's reputation only to be disappointed when the product does not meet their expectations." *Id.*

Plaintiff has identified a confused and disappointed consumer of the alleged gray market goods: the Minnesota Air National Guard (the "ANG"). The four Fujikura-brand fusion splicers FOH sold to Sana were to be used by the ANG. Doc. 6-10 at 2-5, 31. Each splicer initially was shipped by Fujikura to China and licensed for use only in that country. Doc. 6-8 at 13-27. FOH purchased the splicers, resold them to Sana, and shipped them to the ANG at Sana's direction. Doc. 6-10 at 3, 31. Less than a month after receiving one of the Fujikura splicers from FOH, the ANG had concerns about an error message on the unit's startup screen stating that the unit is "licensed for use only in Europe." Docs. 6-9 at 2, 6-10 at 36. Although pressing an "agree" button would make the message disappear, the ANG worried that the unit "may not be configured properly for U.S. use." Doc. 6-10 at 35. The ANG also had concerns about a label FOH had placed on the unit warning the operator not to update the unit's software using Fujikura's website, but instead to return the unit to FOH. Because National Guard personnel would need to be able to update the software in the field, the ANG rightly wondered, "Why would connecting the unit to Fujikura's website damage it?" *Id.* ANG was not satisfied with the fusion splicers and ultimately shipped them to Plaintiff. Docs. 6-9 at 2, 6-10

at 4.

The sale of gray market products under the same trademark as the authorized products is likely to cause consumer confusion, and thereby run afoul of Section 43 of the Lanham Act, where the gray market products differ materially from the authorized products. *See PepsiCo, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999). "The threshold of materiality 'is always quite low.'" *Id.* (quoting *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir. 1992)). "'The existence of any difference between [the trademark owner's] product and the allegedly infringing gray good that consumers would likely consider to be relevant when purchasing a product creates a presumption of consumer confusion sufficient to support a Lanham Trade Mark Act claim.'" *Id.*; *see Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (because many factors influence a consumer's decision to purchase a product, the materiality standard "'must be kept low to include even subtle differences between products'") (citation omitted).

Given the alterations FOH made to the Fujikura-brand fusions splicers resold to Sana, *see* Doc. 6-8 at 13-17, and the ANG's confusion about those alterations and dissatisfaction with the products, *see* Doc. 6-10 at 35-36, serious questions exist as to whether there are material differences between the domestic fusion splicers distributed by Plaintiff (Fujikura's exclusive licensee) and the gray market goods resold by FOH. *See PepsiCo*, 70 F. Supp. 2d at 1059 (labeling and language differences were "material and demonstrate that there is a likelihood of confusion and deception concerning the nature and origin of the goods"); *Hokto Kinoko*, 2011 WL 3625382, at *7 (material differences can relate to a product's labeling and quality control standards); *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) ("many cases have found a likelihood of confusion when a trademark owner was prevented from exercising quality control over the merchandise bearing its mark"). Stated differently, Plaintiff has presented evidence suggesting that the Fujikura-brand fusion splicers FOH resells "are

not 'genuine' within the meaning of the Lanham Act and that consumers are therefore likely to be confused or deceived about the 'sponsorship' and 'characteristics' of the [splicers]." *Zip*, 2010 WL 648696, at *4; *see Beltronics*, 562 F.3d at 1072 (a material different product "is not genuine and may generate consumer confusion about the source and the quality of the trademarked product"). In short, Plaintiff has demonstrated the existence of serious questions – that is, "a fair chance of success on the merits" – with respect to its Lanham Act claim for unfair competition, 43 U.S.C. § 1125(a)(1)(A). *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

Plaintiff also has raised serious questions concerning its false advertising claim. Section 43 of the Lanham Act, 43 U.S.C. § 1125(a)(1)(B), "explicitly furnishes a private right of action 'against persons who make false and deceptive statements in a commercial advertisement[.]'" *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 923 (9th Cir. 2010) (citation omitted). Plaintiff has presented evidence showing that FOH offers for sale on eBay "new" Fujikura-brand fusion splicers. Docs. 6-4 at 5, 6-5 at 4. The condition "new" – as opposed to "used" and "refurbished" items – is defined on eBay as a "brand-new, unused, unopened, undamaged item in its original packaging[.]" Doc. 6-6 at 2. As explained more fully above, Plaintiff has presented evidence suggesting that FOH makes material alterations to the Fujikura splicers before reselling them. FOH itself admits that the Fujikura splicers it advertises as being "new" are in fact used first by FOH for "quality control" purposes. Doc. 21 at 5, 15. Plaintiff has demonstrated the existence of serious questions with respect to its Lanham Act claim for false advertising.

Because Plaintiff has not identified the specific contracts under which Fujikura sells its products overseas, FOH asserts, Plaintiff has not established whether Fujikura restricts the ability of purchasers to resell products in the United States. Doc. 21 at 3, 9. Plaintiff has presented testimony from a Fujikura manager providing that the fusion splicers at issue were shipped "to a distributor in China for resale in China" and "are not licensed for use outside China." Doc. 6-8 at 16-17. This evidence is sufficient to raise

"serious questions," that is, questions which are "'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Republic of the Philippines*, 862 F.2d at 1362 (citation omitted).

FOH further asserts that it "carefully and explicitly" informs consumers that FOH, and not Plaintiff or Fujikura, services and warranties the splicers sold by FOH. Doc. 21 at 5. Given FOH's claim that it sells "genuine Fujikura products materially the same as those sold by AFL" (Doc. 21 at 10), serious questions exist as to whether FOH sufficiently discloses that the Fujikura splicers it resells are different from the original goods so as to alleviate the possibility of consumer confusion. *See Beltronics*, 562 F.3d at 1074-75.

FOH's reliance on *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987), is misplaced. In *NEC*, unlike this case, the parties stipulated that the defendant's imported products were genuine goods. 810 F.2d at 1510; *see Hokto Kinoko*, 2011 WL 3625382, at *6.

### C. Irreparable Harm.

FOH asserts that because it provides information about the warranty, service, and software on the Fujikura splicers it resells, neither Plaintiff nor Fujikura is likely to suffer irreparable harm from the sale of the gray market goods. Doc. 21 at 17. The Court does not agree.

Trademarks serve as "'the identity of their owners and in them resides the reputation and goodwill of their owners.'" *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, No. CIV. 2:10-2751, 2011 WL 221651, at *12 (E.D. Cal. Jan. 24, 2011) (citation omitted). This Circuit "has recognized that damage to goodwill is an irreparable harm." *Id.* (citing *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). Given the ANG's dissatisfaction with the Fujikura-brand splicers resold by FOH, the Court finds that Plaintiff is likely to suffer irreparable injury to its reputation and goodwill from FOH's sale of gray market fusion splicers in

the United States.

### D. Preliminary Injunction Summary.

The Court concludes that the Lanham Act claims raise serious questions, that Plaintiff is likely to suffer irreparable harm absent preliminary relief, that the balance of equities tips sharply in Plaintiff's favor, and that issuance of an injunction is in the public interest. Consistent with traditional principles of equity, *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006), the Court will exercise its discretion and enter a preliminary injunction against FOH on the Lanham Act claims.

The Court finds the proposed preliminary injunction (Doc. 6-11) to be impermissibly broad in that it would, among other things, enjoin FOH from importing and reselling any product – including truly genuine goods – bearing the "Fujikura" mark. Plaintiff and FOH are directed to confer in good faith and provide the Court with a stipulated preliminary injunction consistent with this order by **September 30, 2011**. The proposed injunction shall include the amount of the bond to be posted by Plaintiff. *See* Fed. R. Civ. P. 65(c). If the parties are unable to agree, they shall submit simultaneous proposed injunctions by **September 30, 2011**.

## IV. Plaintiff's Motion to Transfer.

Plaintiff has filed a motion to transfer a related case, *AFL Telecommunications LLC v. SurplusEQ.com, Inc.*, No. CV-11-01086-FJM (D. Ariz. May 31, 2011), to the undersigned Judge pursuant to Rule 42.1(a) of the Local Rules of Civil Procedure. Doc. 24. No party in either case opposes the motion. The Court finds that the interests of judicial economy are best served by transferring the *SurplusEQ.com* case to the undersigned. Plaintiff's unopposed motion to transfer will be granted. Plaintiff has not requested consolidation under Local Rule 42.1(b) or Rule 42(a). *See* Doc. 28 at 2.

**IT IS ORDERED:**

1. Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 19) is **granted in part** and **denied in part**. The motion is granted with respect to the claims

- 16 -

asserted against George Kyrias and denied with respect to Fiberoptic Hardware LLC ("FOH").

2. The motion to dismiss the copyright infringement claim (Doc. 20) is **granted**.

3. Plaintiff's motion for a preliminary injunction (Doc. 6) is **granted in part** and **denied in part**. The motion is granted with respect to the Lanham Act claims asserted against FOH in counts one and two of the complaint. The motion otherwise is denied.

4. Plaintiff and FOH shall confer in good faith and provide the Court with a stipulated preliminary injunction by **September 30, 2011**. If the parties are unable to agree, they shall submit simultaneous proposed injunctions by **September 30, 2011**.

5. Plaintiff's motion to transfer related case (Doc. 24) is **granted**. The Clerk, pursuant to Local Rule 42.1(a), is directed to transfer to the undersigned Case No. CV-11-01086-FJM.

6. Defendants' motion to stay decision on consolidation (Doc. 26) is **denied** as moot.

Dated this 20th day of September, 2011.

_____
David G. Campbell
United States District Judge