UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


AFL Telecommunications LLC v. SurplusEQ.com Inc., et al.

2:11-cv-01086


# AMENDED APPLICATION FOR ISSUANCE OF COMMISSION FOR DEPOSITIONS IN A FOREIGN COUNTRY PURSUANT TO APPLICABLE CONVENTION


Exhibit A – Article 17 of the United States–Japan Consular Convention

ARIZONA STATE UNIVERSITY
COLLEGE OF LAW LIBRARY

# INTERNATIONAL LEGAL
# MATERIALS

## CURRENT DOCUMENTS

VOLUME II                    NUMBER 1

JANUARY 1963

THE AMERICAN SOCIETY OF INTERNATIONAL LAW

2223 MASSACHUSETTS AVENUE, N.W.

WASHINGTON 8, D.C.

CONSULAR CONVENTION BETWEEN THE UNITED STATES AND JAPAN

| 88TH CONGRESS }<br>*1st Session* } | SENATE | { | EXECUTIVE<br>I |
|---|---|---|---|

## CONSULAR CONVENTION WITH JAPAN

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONSULAR CONVENTION BETWEEN THE UNITED STATES OF
AMERICA AND JAPAN, TOGETHER WITH A PROTOCOL RELATING
THERETO, SIGNED AT TOKYO ON MARCH 22, 1963

JUNE 13, 1963.—Convention was read the first time and, together with the message
and accompanying papers, was referred to the Committee on Foreign Relations
and was ordered to be printed for use of the Senate

THE WHITE HOUSE, *June 13, 1963.*

*To the Senate of the United States:*

With a view to receiving the advice and consent of the Senate to
ratification, I transmit herewith the consular convention between the
United States of America and Japan, together with a protocol relating
thereto, signed at Tokyo on March 22, 1963.

I transmit also, for the information of the Senate, the report by
the Secretary of State with respect to the convention.

I recommend that the Senate give early and favorable consideration
to the convention and protocol submitted herewith and give its advice
and consent to their ratification.

JOHN F. KENNEDY.

Enclosures: (1) Report of the Secretary of State; (2) consular con-
vention with Japan, with protocol, signed at Tokyo March 22, 1963.)

2          CONSULAR CONVENTION WITH JAPAN

DEPARTMENT OF STATE,
*Washington.*

THE PRESIDENT,
*The White House*:

The undersigned, the Secretary of State, has the honor to lay before the President, with a view to its transmission to the Senate to receive the advice and consent of that body to ratification, if the President approves thereof, a consular convention between the United States of America and Japan, together with a protocol relating thereto, signed at Tokyo on March 22, 1963.

The provisions of the convention, like consular provisions in force between the United States and many other countries, are designed to regulate the consular affairs of each country in the territory of the other country and to formalize, so far as practicable, the understandings of the two countries in regard to the treatment to be accorded consular officials and employees. The convention covers such matters as the status of a consular establishment, the duties and functions of consular officers, and the rights, privileges, and immunities of the consular personnel of each country stationed in the territory of the other country. More specifically, the convention contains provisions relating to territorial application and definitions (pt. I); appointments and districts of consular officers and consulates (pt. III); the financial privileges of the sending state and of its consular officers and employees, including certain tax exemptions and customs privileges (pt. IV); the functions which a consular officer may perform (pt. V); the authority of consular officers in connection with the settlement of estates and transfer of property (pt. VI); and the authority of consular officers in regard to shipping matters (pt. VII).

The convention is similar in substance to the convention with Korea signed on January 8, 1963 (S. Ex. B, 88th Cong., 1st sess.), which is presently under consideration in the Senate; however, the provisions of the convention with Japan are more comprehensive than the provisions of the convention with Korea. With the exception of the provisions relating to the authority of consular officers in connection with the settlement of estates and transfer of property, which are almost identical to the corresponding provisions in the convention with Korea, the convention with Japan is similar in pattern and substance to the convention with Ireland signed on May 1, 1950 (5 U.S.T. 949; TIAS 2984; S. Ex. P, 81st Cong., 2d sess.), and the convention with the United Kingdom signed on June 6, 1951 (3 U.S.T. 3426; TIAS 2494; S. Ex. O, 82d Cong., 1st sess.).

The protocol, considered an integral part of the convention, clarifies and construes certain provisions of the convention.

It is provided in article 27 that the convention shall be ratified, that the instruments of ratification shall be exchanged at Washington, and that the convention shall enter into force on the 30th day after the date of such exchange and shall continue in force for a term of 5 years. It is provided further that, unless 6 months before the expiration of the 5-year term either Government shall have given notice to the other of an intention to terminate the convention, it shall continue in force thereafter until 6 months from the date on which either Government shall have given to the other Government notice of termination.

It is hoped that the convention will be given favorable consideration by the Senate.

Respectfully submitted.

DEAN RUSK,
*Secretary of State.*

(Enclosure: Consular convention with Japan, with protocol, signed at Tokyo, March 22, 1963.)

## CONSULAR CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND JAPAN

The United States of America and Japan, being desirous of regulating the consular affairs of one country in the territories of the other, have decided to conclude a Consular Convention and have appointed as their Plenipotentiaries for this purpose:

The United States of America:

Edwin O. Reischauer, Ambassador Extraordinary and Plenipotentiary, and

Japan:

Masayoshi Ohira, Minister for Foreign Affairs

who, having communicated to each other their respective full powers, which were found in good and due form, have agreed as follows:

### PART I. APPLICATION AND DEFINITIONS

#### ARTICLE 1

The territories of the High Contracting Parties to which the provisions of this Convention apply shall be understood to comprise all areas of land and water subject to the sovereignty or authority of either High Contracting Party, except the Panama Canal Zone.

#### ARTICLE 2

For the purpose of this Convention:

(1) The term "sending state" means the High Contracting Party by which a consular officer is appointed;

(2) The term "receiving state" means the High Contracting Party within whose territories a consular officer of the sending state exercises his functions;

(3) The term "nationals" means

(a) in relation to the United States of America, all citizens of the United States and all persons under the protection of the United States, including, where the context permits, all juridical entities duly created in or under the laws of any of the territories of the United States to which the Convention applies;

(b) in relation to Japan, all persons possessing the nationality of Japan, including, where the context permits, all juridical entities duly created under the laws of Japan;

(4) The term "person" shall be deemed to include any individual or juridical entity;

(5) The term "vessel", unless otherwise specified, means any ship or craft documented under the laws of any of the territories of the sending state to which the Convention applies;

4          CONSULAR CONVENTION WITH JAPAN

(6) The term "consular office" shall, when used to describe or identify physical property, be deemed to refer to the premises used by the sending state for the conduct of official consular business;

(7) The term "consular establishment" shall be deemed to include all immovable property used or held by the sending state for a consular office, for residences for one or more consular officers or employees or for related purposes, all movable property required to furnish, equip and operate such immovable property and, in general, all property needed for the effective performance of consular functions, including vehicles, vessels and aircraft;

(8) The term "consular officer" means any individual authorized by the sending state to exercise consular functions who is granted an exequatur or provisional or other authorization by the appropriate authorities of the receiving state;

(9) The term "consular employee" means any individual, other than a consular officer, who performs administrative or technical work or belongs to the service staff of a consular office provided that his name has been duly communicated to the appropriate authorities of the receiving state in accordance with the provisions of paragraph (2) of Article 6;

(10) The term "archives" shall be deemed to include official correspondence, documents, papers, books, records, cash, stamps, seals, filing cabinets, safes and other similar items held or used for official purposes;

(11) The term "local subdivision" shall be deemed to refer to any political or administrative subdivision of one of the High Contracting Parties, including, by way of example and not by way of limitation, any state, prefecture, county or municipality;

(12) The term "authorities of the receiving state" shall be deemed to include the authorities of the receiving state and of any local subdivision thereof;

(13) The term "laws" shall be deemed to include the laws, decrees, regulations, ordinances and similar measures having the force of law in the territories of either High Contracting Party or in any local subdivision thereof.

## PART II. APPOINTMENTS AND DISTRICTS

### ARTICLE 3

(1) The sending state may establish and maintain consular offices in the territories of the receiving state at any place where the receiving state agrees to the establishment thereof.

(2) The sending state may, subject to the right of the receiving state to object thereto, prescribe the limits of its consular districts in the receiving state and shall keep the receiving state informed of such limits.

(3) A consular officer may, upon notification to and in the absence of objections from the receiving state, perform consular functions outside his consular district.

### ARTICLE 4

(1) The sending state may assign or appoint consular officers of such number and rank as it may deem necessary to any of its consular offices in the receiving state.   The sending state shall notify the receiving state in writing of the assignment or appointment of a consular officer to a consular office in the receiving state.

(2) The receiving state shall, on presentation of the officer's commission or other notification of assignment or appointment, grant as soon as possible and free of charge such consular officer an exequatur or other authorization to perform consular functions.   The receiving state shall, when necessary, pending the grant of an exequatur or other authorization, grant the consular officer a provisional authorization.

(3) The receiving state may not refuse to grant an exequatur or other authorization without good cause.

(4) The receiving state shall not, except as otherwise specifically provided in this Convention, be deemed to have consented to having a consular officer acting as such or to have extended to him the benefits of this Convention prior to the grant of an exequatur or other authorization, including provisional authorization.

### ARTICLE 5

(1) The receiving state shall, upon request, inform without delay its appropriate authorities of the name of any consular officer entitled to act under this Convention.

(2) As an official agent of the sending state, a consular officer shall be entitled to special protection and to the high consideration of all officials of the receiving state with whom he has official intercourse.

(3) The receiving state may revoke the exequatur or other authorization of a consular officer whose conduct has given serious cause for complaint.   The reason for such revocation shall, upon request, be furnished to the sending state through diplomatic channels.

### ARTICLE 6

(1) A consular officer or employee may be assigned temporarily in an acting capacity to perform duties of a consular officer who has died or is unable to act through illness, absence or other cause. Pending the return of the former officer, the assignment of a new officer or the confirmation of the acting officer, such acting officer may perform the duties and enjoy the benefits of the provisions of this Convention upon notification to the Government of the receiving state.

(2) The sending state shall be free to employ the necessary number of consular employees at its consular offices, but the appropriate authorities of the receiving state shall be informed of the name and address of each employee.   It will be for the Government of the receiving state to designate the particular authority to whom this information is to be given.

(3) The sending state may, with the permission of the receiving state, and in accordance with the provisions of Article 4, assign one or more members of its diplomatic mission accredited to the receiving state to the performance of consular functions.   Such members shall

**6**  CONSULAR CONVENTION WITH JAPAN

be entitled to the benefits, and be subject to the obligations, of this Convention, without prejudice to any additional personal privileges to which they may be entitled by virtue of being members of the diplomatic mission of the sending state.

(4) The receiving state may refuse to accept a size of the consular staff exceeding what is reasonable and normal having regard to circumstances and conditions in the consular district, and to the needs of the particular consular office

## PART III. LEGAL RIGHTS AND IMMUNITIES

### ARTICLE 7

(1) The sending state may acquire under such form of tenure as it may choose, whether on lease, in full ownership, or under such other form of tenure as may exist under the laws of the receiving state, and may thus hold and occupy, either in its own name or in the name of one or more persons acting on behalf of the sending state, land, buildings, parts of buildings, and appurtenances located in the receiving state and required by the sending state for the purposes of a consular office, or of a residence for a consular officer or employee, or for other purposes to which the receiving state does not object, arising out of the operation of a consular establishment of the sending state. If, under the laws of the receiving state, the permission of the authorities of the receiving state must be obtained as a prerequisite to any such acquisition, such permission shall be granted on request.

(2) The sending state shall have the right to erect, as part of its consular establishments, buildings and appurtenances on land which it so owns or holds on lease.

(3) It is understood that the sending state shall not be exempt from compliance with any local building, zoning or town planning regulations applicable to all land in the area in which such land is situated.

(4) The phrase "one or more persons acting on behalf of the sending state" shall, within the meaning of Articles 7 and 12, be deemed to refer to any person or persons holding property in a trust or similar capacity for the benefit of the sending state.

### ARTICLE 8

(1) The consular officer in charge may place, outside the consular office, the coat-of-arms or national device of the sending state and an appropriate inscription in the official language of the sending state designating such office.

(2) The consular officer in charge may fly the flag of the sending state and the consular flag at the consular office. Any consular officer may also place the coat-of-arms or national device and fly the flag of the sending state and its consular flag on the vehicles, vessels and aircraft which he employs in the exercise of his duties. Such flags may also be flown on suitable occasions at the residence of the consular officer in charge and in times of emergency at the residence of any consular officer.

(3) (a) The archives of the consular office shall be kept in a place entirely separate from the place where the private or business papers of consular officers and employees are kept. This provision does not require the separation of diplomatic from consular archives when a consular office forms part of the diplomatic mission.

(b) The archives, kept in a consular office of the sending state, shall at all times be inviolable, and the authorities of the receiving state may not, under any pretext, examine or detain them.

(4) A consular office shall not be entered by the police or other authorities of the receiving state, except with the consent of the responsible consular officer or, if such consent cannot be obtained, pursuant to appropriate writ or process and with the consent of the Secretary of State when the United States of America is the receiving state or the Minister for Foreign Affairs when Japan is the receiving state. The consent of the responsible consular officer shall be presumed in the event of fire or other disaster or in the event that the authorities of the receiving state have probable cause to believe that a crime involving violence to persons or property has been, or is being, or is about to be committed in the consular office.

(5) A consular office shall not be used to afford asylum to fugitives from justice. If a consular officer refuses to surrender a fugitive from justice on the lawful demand of the authorities of the receiving state, such authorities may, in accordance with the procedures established by paragraph (4) of this Article, enter the consular office to apprehend the fugitive.

(6) Any entry into or search of a consular office pursuant to paragraphs (4) and (5) of this Article, shall be conducted with due regard to the inviolability of the consular archives.

### ARTICLE 9

(1) The sending state shall enjoy an exemption from all military requisition, contributions or billeting with respect to property forming part of its consular establishments in the receiving state, including all vehicles, vessels and aircraft. Immovable property may, however, be seized or taken for purposes of national defense or public utility in accordance with the laws of the receiving state.

(2) A consular officer or employee shall enjoy an exemption from all military requisition, contributions or billeting with respect to the private residence and the furniture and other household articles and all vehicles, vessels and aircraft held or possessed by him. Such private residence may, however, be seized or taken for purposes of national defense or public utility in accordance with the laws of the receiving state.

(3) In any of the cases referred to in paragraphs (1) and (2) of this Article, every effort shall be made to avoid interference with the performance of consular functions.

(4) The sending state or the consular officer or employee shall receive due compensation for all such property seized or taken. Compensation shall be payable in a form readily convertible into the currency of and transferable to the sending state, not later than three months from the date on which the amount of compensation has been finally fixed.

8          CONSULAR CONVENTION WITH JAPAN

### ARTICLE 10

(1) A consular officer may be in communication with his Government or with the diplomatic mission and consular offices of the sending state in the receiving state or with other diplomatic missions and consular offices of the sending state, making use of all public means of communication.    This includes the right to make use of secret language.    In addition, a consular officer may send and receive official documents, either in clear or secret language, by courier or by means of sealed official pouches and other official containers.    In sending or receiving consular pouches through postal channels, a consular officer shall be subject to the postal laws of the receiving state, provided that the provisions of this paragraph shall not be affected thereby.

(2) The official documents referred to in this Article shall be inviolable and the authorities of the receiving state shall not examine or detain them.    Sealed official pouches and other official containers shall be inviolable when they are certified by a responsible officer of the sending state as containing only official documents.

(3) During such time as the receiving state is engaged in armed conflict, the right of communication, other than that relating to communications between the consular officer and his Government and between the consular officer and the diplomatic mission of the sending state in the receiving state, may be subject to reasonable restriction by the receiving state.

### ARTICLE 11

(1) (a) A consular officer or employee shall not, except with the consent of the sending state notified to the receiving state in writing through diplomatic channels, be subject to the jurisdiction of the courts of the receiving state in respect of acts performed in his official capacity, falling within the functions of a consular officer under this Convention.    However, the courts of the receiving state shall not be precluded from exercising jurisdiction over a consular employee who is a national of the receiving state in respect of acts committed through wilful misconduct or gross negligence.

(b) A consular officer shall be exempt from arrest or prosecution in the receiving state except when charged with the commission of a crime which, upon conviction, might subject the individual guilty thereof to a sentence of imprisonment for a period of one year or more.

(2) It is understood that the provisions of subparagraph (1)(a) of this Article do not preclude a consular officer or employee from being held liable in a civil action arising out of a contract concluded by him in his private capacity and not within the scope of his official duties, and that the provisions of subparagraph (5)(b) of this Article to not entitle a consular officer or employee to refuse to produce any document or to give evidence relating to such a contract.

(3) When the receiving state is permitted to exercise its jurisdiction over a consular officer or employee, it must exercise its jurisdiction in such a manner as not to interfere unduly with the performance of consular functions.

(4) A consular officer or employee shall enjoy exemption from military, naval, air, police, administrative or jury service of every kind, and from any contribution in lieu thereof.

(5) (a) A consular officer or employee may be required to give testimony in either a civil or a criminal case, except as provided in subparagraph (b) of this paragraph. The administrative or judicial authorities requiring his testimony shall take all reasonable steps to avoid interference with the performance of his official duties and, where possible or permissible, arrange for the taking of such testimony orally or in writing, at his office or residence.,

(b) A consular officer or employee shall be entitled to refuse a request from the administrative or judicial authorities of the receiving state to produce any documents from the consular archives or to give evidence relating to matters falling within the scope of his official duties. Such a request shall, however, be complied with in the interests of justice if it is possible to do so without prejudicing the interests of the sending state. A consular officer or employee is also entitled to decline to give evidence as an expert witness with regard to the laws of the sending state.

(6) A consular officer or employee and members of his family forming part of his household shall be exempt in the receiving state from any requirements with regard to the registration of foreigners and the obtaining of permission to reside. Such members of the family of a consular officer or employee shall not receive the benefits of this paragraph if gainfully employed in the receiving state.

(7) A consular officer shall not, while holding his exequatur or other authorization, including provisional authorization, be subject to deportation.

(8) All vehicles, vessels and aircraft owned by the sending state and used for consular purposes, and all vehicles, vessels and aircraft owned by a consular officer or employee of the sending state shall be adequately insured against third party risks, with an insurance company authorized to do, and actually carrying on, business in the receiving state. Any claim arising under any such policy shall be deemed to be a claim arising out of a contract involving liability in a civil action, as contemplated in paragraph (2) of this Article.

## PART IV. FINANCIAL PRIVILEGES

### ARTICLE 12

(1) The sending state, or one or more persons acting on behalf of the sending state, shall, with respect to its consular establishments in the receiving state, be exempt from the payment of all taxes or similar charges of any kind imposed by the receiving state or by any local subdivision thereof for the payment of which the sending state, or one or more persons acting on behalf of the sending state, would otherwise be legally liable, with respect to—

(a) the acquisition, ownership, use or possession of immovable property, owned or otherwise held or occupied by the sending state and used exclusively for any of the purposes specified in paragraph (1) of Article 7, except taxes or other assessments imposed for services or local public improvements by which and to the extent that such property is benefited;

(b) the acquisition, ownership, possession or use of movable property, including vehicles, vessels and aircraft, owned or used by the sending state exclusively for any of the purposes specified in paragraph (1) of Article 7;

Ex. Doc. I, 88-1——2

10      CONSULAR CONVENTION WITH JAPAN

     (c) the fees received in compensation for consular services and the receipts given for the payment of such fees;.

     (d) any other acts or transactions, including the acquisition or rendition of services, incident to the operation of a consular establishment of the sending state.

(2) No provision of subparagraph (1)(d) of this Article shall be construed to accord the sending state, or one or more persons acting on behalf of the sending state, exemptions from the taxes on electricity and gas to be imposed on the use of electricity or gas at a consular establishment used or held for residence for a consular officer or employee or for related purposes, unless:

     (a) (i) such consular establishment is owned by the sending state, or

     (ii) such consular establishment is used or held by the sending state on a lease, during a period of time not shorter than a year and irrespective of changes in residents, and

     (b) the sending state is the party to the contract on the use of electricity or gas and is liable for the payment of charges for electricity or gas.

(3) The foregoing exemptions shall not apply with respect to taxes or other similar charges of any kind for which some other person is legally liable, notwithstanding that the burden of the tax or other similar charge may be passed on to the sending state or one or more persons acting on behalf of the sending state.

#### ARTICLE 13

(1) Any consular officer or employee who is a national of the sending state, whether or not he is a national of any other state, shall be exempt from the payment of all taxes or similar charges of any kind imposed by the receiving state or any local subdivision thereof on the official emoluments, salaries, wages, or allowances received by such officer or employee from the sending state.

(2) (a) A consular officer, or a consular employee who performs administrative or technical work and who does not belong to the service staff shall, except as other wise provided in paragraph (3) of this Article, be exempt from the payment of all taxes or similar charges of any kind, including taxes or similar charges incident to the licensing, titling, registration, use and operation of vehicles owned by such officer or employee, imposed by the receiving state or any local subdivision thereof for the payment of which such officer or employee would otherwise be legally liable. The number of vehicles entitled to such exemption shall be decided in accordance with the laws of the receiving state, provided that such officer or employee shall be entitled to such exemption for at least one vehicle. The exemption of taxes or similar charges on imports shall be as provided in Article 14.

(b) The foregoing exemption shall not apply with respect to taxes or other similar charges of any kind for which some other person is legally liable, notwithstanding that the burden of the tax or other similar charge may be passed on to such officer or employee.

(3) The provisions of subparagraph (2)(a) of this Article shall not apply to:

     (a) taxes imposed on the acquisition, ownership or occupation of immovable property situated in the receiving state;

CONSULAR CONVENTION WITH JAPAN          11

(b) taxes imposed on income derived from sources within the receiving state, other than those stipulated in paragraph (1) of this Article;

(c) taxes on instruments effecting transactions, such as stamp duties imposed or collected in connection with the transfer of property, or taxes on the transfer of securities;

(d) taxes on the use of amusement facilities, the amusement tax including any hotel and restaurant tax, the spa tax, the traveling tax, taxes on electricity and gas, and the diesel oil delivery tax;

(e) taxes imposed by reason of or incident to the transfer by gift of property located in the receiving state;

(f) taxes imposed by reason of or incident to the passing on death of property located in the receiving state, such as estate, inheritance, and succession taxes.

(4) (a) Notwithstanding any provisions of the preceding paragraphs of this Article, no such tax as estate, inheritance or succession tax shall be imposed or collected by the receiving state or any local subdivision thereof by reason of or incident to the passing of movable property located in the receiving state upon the death of a consular officer or employee in respect of that part of such movable property which the deceased consular officer or employee owned within the receiving state solely in connection with the performance of his official duties, and which does not exceed in value two times the amount of all official emoluments, salaries and allowances received by the consular officer or employee for the year immediately preceding his death.

(b) For the purpose of paragraph (4)(a) of this Article and subject to the limitations thereof, household and personal effects, personally owned vehicles and demand deposit accounts or time deposit accounts with a term shorter than one year of the deceased consular officer or employee shall be deemed conclusively to constitute property owned by him solely in connection with the performance of his official duties.

ARTICLE 14

(1) The sending state may import into the receiving state, free of all custom duties and internal revenue or other taxes imposed upon or by reason of importation by the receiving state or by any local subdivision thereof, all articles, including vehicles, vessels and aircraft, intended for official use in the receiving state in connection with any of the purposes specified in paragraph (1) of Article 7.

(2) A consular officer may import into the receiving state, free of all custom duties and internal revenue or other taxes imposed upon or by reason of importation by the receiving state or by any local subdivision thereof, a reasonable quantity of baggage, effects and other articles, including vehicles, vessels and aircraft, required for the exclusive personal use of himself or members of his family forming part of his household. Such exemption from duties and taxes shall be granted, during the entire period such officer serves in the receiving state, with respect to—

(a) articles accompanying him to his consular post on first arrival or on any subsequent arrival;

(b) articles consigned to him or withdrawn by him from customs custody for the above-mentioned purposes.

12        CONSULAR CONVENTION WITH JAPAN

(3) A consular employee who performs administrative or technical work and who does not belong to the service staff shall also enjoy the privileges specified in the preceding paragraph with respect to articles imported at the time of his first arrival.

(4) It is, however, understood that—

(a) the receiving state may, as a condition to the granting of the exemption provided in this Article, require that a notification of any importation be given in such manner as it may prescribe;

(b) the exemption provided in this Article, being in respect of articles imported for official or personal use only, does not extend to, inter alia, articles imported as an accommodation to others or for sale or for other commercial purposes. However, articles imported as samples of commercial products solely for display within a consular office shall not be regarded as excluded from the exemption provided in this Article;

(c) the receiving state may determine that the exemption provided in this Article does not apply in respect of articles grown, produced or manufactured in the receiving state which have been exported therefrom without payment of or upon repayment of taxes or duties which would have been chargeable but for such exportation;

(d) nothing in this Article shall be construed to excuse compliance with customs formalities, or to permit the entry into the receiving state of any article the importation of which is specifically prohibited by the laws of the receiving state;

(e) the laws of the receiving state shall apply to the disposition of the articles imported under paragraphs (1), (2) and (3) of this Article; and

(f) paragraph (1) of this Article and paragraph (5) of Article 17 shall not be construed to prejudice the laws of the receiving state concerning the importation of cinema films for a consular office excluding films for academic or cultural use, and films which are in fact documentary or newsreels, imported exclusively for official use.

### PART V. GENERAL CONSULAR FUNCTIONS

#### ARTICLE 15

(1) A consular officer shall be entitled within his consular district to—

(a) interview, communicate with, assist and advise any national of the sending state;

(b) inquire into any incidents which have occurred affecting the interests of any such national;

(c) assist any such national in proceedings before or in relations with the authorities of the receiving state and, where necessary, arrange for legal assistance for him.

(2) For the purpose of protecting nationals of the sending state and their property and interests, a consular officer shall be entitled to apply to and correspond within his consular district with the appropriate authorities, including the appropriate departments of the central government of the receiving state. He shall not, however, be entitled to correspond with or to make diplomatic representations to

the Department of State when the United States of America is the receiving state or the Ministry of Foreign Affairs when Japan is the receiving state except in the absence of any diplomatic representative of the sending state.

(3) A consular officer may also communicate with the authorities of the receiving state within his consular district on any other matters falling within his competence.

(4) A national of the sending state shall have the right at all times to communicate with the appropriate consular officer and, unless subject to lawful detention, to visit him at his consular office.

ARTICLE 16

(1) The appropriate authorities of the receiving state shall, at the request of any national of the sending state who is confined in prison awaiting trial or is otherwise detained in custody within his consular district, immediately inform a consular officer of the sending state. A consular officer shall be permitted to visit without delay, to converse privately with, and to arrange legal representation for any national of the sending state who is so confined or detained. Any communication from such a national to the consular officer shall be forwarded without undue delay by the authorities of the receiving state.

(2) Where a national of the sending state has been convicted and is serving a sentence of imprisonment, a consular officer in whose consular district the sentence is being served shall, upon notification to the appropriate authorities of the receiving state, have the right to visit him in prison. Any such visit shall be conducted in accordance with prison regulations, which shall permit reasonable access to and opportunity of conversing with such national. The consular officer shall also be allowed, subject to the prison regulations, to transmit communications between the prisoner and other persons.

ARTICLE 17

(1) A consular officer may within his consular district:

(a) receive such declarations as may be required to be made under the nationality laws of the sending state;

(b) issue such notices to, receive such declarations from and provide for such medical examinations of a national of the sending state as may be required under the laws of the sending state with regard to compulsory national service;

(c) register a national of the sending state, register or receive notifications of the birth or death of a national of the sending state, record a marriage celebrated within the receiving state when at least one of the parties is a national of the sending state, and receive any such declarations pertaining to family relationships of a national of the sending state as may be required under the laws of that state;

(d) issue, amend, renew, validate and revoke, in conformity with the laws of the sending state, visas, passports and other similar documents;

(e) (i) serve judicial documents, on behalf of the courts of the sending state, upon, or

**14**        CONSULAR CONVENTION WITH JAPAN

(ii) take depositions, on behalf of the courts or other judicial tribunals or authorities of the sending state, voluntarily given, or

(iii) administer oaths to any person in the receiving state in accordance with the laws of the sending state and in a manner not inconsistent with the laws of the receiving state;

(f) obtain copies of or extracts from documents of public registry;

(g) issue, with regard to goods, certificates of origin and other necessary documents for use in the sending state.

(2) It is understood that the registration or the receipt of notifications of a birth or death by a consular officer, the recording by a consular officer of a marriage celebrated under the laws of the receiving state, and the receipt by a consular officer of declarations pertaining to the family relationships in no way exempts a person from any obligation laid down by the laws of the receiving state with regard to the notification to or registration with the appropriate authorities of the receiving state, of births, deaths, marriages, or other matters pertaining to family relationships of a person.

(3) A consular officer may also within his consular district:

(a) authenticate or certify signatures;

(b) translate into the language of one of the High Contracting Parties acts and documents of any character drawn up in the language of the other High Contracting Party and certify to the accuracy of the translation thereof;

(c) prepare, attest, receive the acknowledgments of, certify, authenticate, legalize and in general take such action as may be necessary to perfect or to validate any act, document or instrument of a legal character as well as copies thereof, including declarations, testamentary dispositions and contracts.

(4) A consular officer may perform the services specified in paragraph (3) of this Article whenever such services are required by a national of the sending state for use outside the territories of the receiving state, or by any person for use in the territories of the sending state or are rendered in accordance with procedures, not prohibited by the laws of the receiving state, established by the sending state for the protection of its nationals abroad or for the proper administration of its laws.

(5) A consular officer may further the cultural, artistic, scientific, commercial, professional and educational interests of the sending state.

PART VI. ESTATES AND TRANSFER OF PROPERTY

ARTICLE 18

(1) In the case of the death of a national of the sending state in the territory of the receiving state, without having in the territory of his decease any known heir or testamentary executor, the appropriate local authorities of the receiving state shall as promptly as possible inform a consular officer of the sending state.

(2) A consular officer of the sending state may, within the discretion of the appropriate judicial authorities and if permissible under the then existing applicable local laws in the receiving state:

(a) take provisional custody of the personal property left by a deceased national of the sending state, provided that the de-

cedent shall have left in the receiving state no heir or testamen-
tary executor appointed by the decedent to take care of his
personal estate; provided that such provisional custody shall be
relinquished to a duly appointed administrator;

(b) administer the estate of a deceased national of the sending
state who is not a resident of the receiving state at the time of
his death, who leaves no testamentary executor, and who leaves
in the receiving state no heir, provided that if authorized to ad-
minister the estate, the consular officer shall relinquish such
administration upon the appointment of another administrator;

(c) represent the interests of a national of the sending state in
an estate in the receiving state, provided that such national is
not a resident of the receiving state, unless or until such national
is otherwise represented; provided, however, nothing herein shall
authorize a consular officer to act as an attorney at law.

(3) Unless prohibited by the laws of the receiving state, a consular
officer may, within the discretion of the court, agency, or person
making distribution, receive for transmission to a national of the
sending state who is not a resident of the receiving state any money
or property to which such national is entitled as a consequence of
the death of another person, including shares in an estate, payments
made pursuant to workmen's compensation laws, pension and social
benefits systems in general, and proceeds of insurance policies.  The
court, agency, or person making distribution may require that a con-
sular officer comply with conditions laid down with regard to—

(a) presenting a power of attorney or other authorization
from such nonresident national,

(b) furnishing reasonable evidence of the receipt of such
money or property by such national, and

(c) returning the money or property in the event he is unable
to furnish such evidence.

(4) Whenever a consular officer shall perform the functions referred
to in paragraphs (2) and (3) of this Article, he shall be subject, with
respect to the exercise of such functions, to the laws of the receiving
state and to the jurisdiction of the judicial and administrative author-
ities of the receiving state in the same manner and to the same extent
as a national of the receiving state.

## Part VII. Shipping

### ARTICLE 19

(1) When a vessel visits a port (which includes any place to which
a vessel may come) in the receiving state, the master and members of
the crew of the vessel shall be permitted to communicate with and,
subject to immigration laws of the receiving state, visit a consular
officer in whose district the port is situated.  For the purpose of
performing any of the duties he is authorized to perform by this
Convention, a consular officer, accompanied, if he desires, by one or
more consular officers or employees on his staff, may proceed on board
the vessel after she has received pratique.

(2) A consular officer may request the assistance of the authorities
of the receiving state in any matter pertaining to the performance
of such duties, and they shall give the requisite assistance unless

16          CONSULAR CONVENTION WITH JAPAN

they have special reasons which would fully warrant refusing it in a
particular case.

### ARTICLE 20

(1) A consular officer may question the master and members of the
crew of a vessel, examine her papers, take statements with regard to
her voyage and her destination and generally facilitate her entry and
departure.  When custom house brokers or shipping agents are avail-
able, however, a consular officer shall not undertake to perform func-
tions normally within the scope of their activities.

(2) A consular officer or employee may appear with the master or
members of the crew of a vessel before the local administrative and
judicial authorities, and may lend his assistance, including, where
necessary, arranging for legal assistance and acting as interpreter in
matters between them and such authorities.

(3) A consular officer may, provided that the judicial authorities
of the receiving state do not exercise jurisdiction in accordance with
the provisions of Article 21, decide or arrange for the settlement of
disputes between the master and members of the crew of a vessel
including disputes as to wages and contracts of service in accordance
with the laws of the sending state, arrange for the engagement and
discharge of the master and members of the crew, and take measures
for the preservation of good order and discipline on the vessel.

(4) A consular officer may take measures for the enforcement of
the shipping laws of the sending state.

(5) A consular officer may, where necessary, make arrangements
for the repatriation and the treatment in a hospital of the master or
members of the crew or the passengers of a vessel.

### ARTICLE 21

(1) Except at the request or with the consent of a consular officer,
the administrative authorities of the receiving state shall not concern
themselves with any matter concerning the internal management of
the vessel.  The judicial authorities of the receiving state may,
however, exercise any jurisdiction which they may possess under the
laws of the receiving state with regard to disputes as to wages and
contracts of service between the master and members of the crew of a
vessel.  The administrative and judicial authorities shall not interfere
with the detention in custody on a vessel of a seaman for disciplinary
offenses, provided that such detention is lawful under the laws of the
sending state and is not accompanied by unjustifiable severity or
inhumanity.

(2) Without prejudice to the right of the administrative and
judicial authorities of the receiving state to take cognizance of crimes
or offenses committed on board a vessel when she is in the ports or
in the waters of the receiving state or to enforce the laws of the
receiving state applicable to vessels of any state in its ports and its
waters or to persons and property thereon, it is the common intention
of the High Contracting Parties that the administrative authorities of
the receiving state should not, except at the request or with the consent
of the consular officer—

    (a) concern themselves with any matter taking place on board
a vessel except for the preservation of peace and order or in the
interests of public health or safety, or

(b) institute prosecutions in respect of crimes or offenses committed on board a vessel in the ports or in the waters of the receiving state unless they are of a serious character or involve the tranquility of the port or unless they are committed by or against persons other than members of the crew who are not nationals of the receiving state.

Crimes or offenses against the laws of the receiving state regarding public health, customs or immigration committed on board a vessel in the ports or waters of that state shall be deemed to be included in the crimes or offenses involving the tranquility of the port.

(3) The provisions of the preceding paragraph shall not be construed as affecting the rights of vessels in innocent passage through the territorial sea. Such rights are determined by international law.

(4) If, for the purpose of exercising the rights referred to in paragraph (2) of this Article, it is the intention of the authorities of the receiving state to arrest or question any person or to seize any property or to institute any formal inquiry on board a vessel, the master or other officer acting on his behalf shall be given an opportunity to inform the consular officer, and, unless this is impossible on account of the urgency of the matter, to inform him in such time as to enable the consular officer or a consular employee on his staff to be present if he so desires. If a consular officer has not been present or represented, he shall be entitled, on his request, to receive from the authorities of the receiving state full information with regard to what has taken place. The provisions of this paragraph do not apply to routine examinations by the authorities of the receiving state with regard to customs, health and the admission of aliens, or to the detention of a vessel or of any portion of her cargo arising out of civil or commercial proceedings in the courts of the receiving state.

#### ARTICLE 22

(1) A consular officer may visit at ports within his consular district a vessel of any flag destined to a port of the sending state, at the request or with the consent of the master of that vessel, in order to enable him to procure the necessary information to prepare and execute such documents as may be required by the laws of the sending state as a condition of entry of such vessel into its ports, and to furnish to the competent authorities of the sending state such information with regard to sanitary or other matters as such authorities may require.

(2) In exercising the rights conferred upon him by this Article, the consular officer shall act with all possible dispatch.

#### ARTICLE 23

(1) If a vessel of the sending state is wrecked in the receiving state, the consular officer in whose district the wreck occurs shall be informed as soon as possible by the appropriate authorities of the receiving state of the occurrence of the wreck.

(2) The appropriate authorities of the receiving state shall take all practicable measures for the preservation of the wrecked vessel, of the lives of persons on board, of the cargo and of other property on board, and for the prevention and suppression of plunder or disorder on the vessel. These measures shall also extend to articles belonging

18      CONSULAR CONVENTION WITH JAPAN

to the vessel or forming part of her cargo which have become separated from the vessel.

(3) If the vessel is wrecked within a port or constitutes a navigational hazard within the territorial waters of the receiving state, the authorities of the receiving state may also order any measures to be taken which they consider necessary with a view to avoiding any damage that might otherwise be caused by the vessel to the port facilities or navigation.

(4) If the owner of the wrecked vessel, his agent, or the underwriters concerned, or the master are not in a position to make arrangements for the disposal of the vessel in accordance with the relevant provisions of the laws of the receiving state, a consular officer shall be deemed to be authorized to make, acting for the owner, the same arrangements as the owner himself could have made if he had been present.

(5) Where any articles belonging to or forming part of a wrecked vessel of any flag (other than that of the receiving state), or belonging to or forming part of the cargo of any such vessel, are found on or near the coast of the receiving state or are brought into any port of that state, the consular officer in whose district the articles are found or brought into port shall be deemed to be authorized to make, acting for the owner of the articles, such arrangements relating to the custody and disposal of the articles as the owner himself could have made if—

(a) in the case of articles belonging to or forming part of the vessel, the vessel is a vessel of the sending state or, in the case of cargo, the cargo is owned by nationals of the sending state; and

(b) neither the owner of the articles, his agent, the underwriters nor the master of the vessel is in a position to make such arrangements.

### ARTICLE 24

For the purposes of Articles 19 to 23, the term "vessel" shall be deemed to include aircraft, and the term "shipping laws" shall be construed, as applied to aircraft, to refer to aviation laws, and the term "waters" shall be construed, as applied to aircraft, to refer to territory of the receiving state.

## PART VIII. FINAL PROVISIONS

### ARTICLE 25

(1) The privileges and immunities conferred by paragraphs (2) and (4) of Article 9, subparagraph (1)(b) and paragraphs (4) and (6) of Article 11, paragraphs (1), (2) and (4) of Article 13 and paragraphs (2) and (3) of Article 14 shall not be accorded to a consular officer or employee, or members of his family forming part of his household, if such officer or employee is a national of the receiving state, or has the status in the receiving state of an alien lawfully admitted for permanent residence, or is engaged in any private occupation for gain in the receiving state, or is other than a full-time officer or employee of the sending state.

(2) The privileges and immunities conferred by paragraph (1) of Article 7, paragraph (4) of Article 8 and paragraph (2) of Article 12 shall not be accorded to the sending state with respect to a consular

764

office in the charge of a consular officer or employee referred to in the preceding paragraph, or with respect to a residence for such consular officer or employee.

### ARTICLE 26

(1) .The provisions of Articles 15 to 23 relating to the functions which a consular officer may perform are not exhaustive. A consular officer shall be permitted to perform other functions, involving no conflict with the laws of the receiving state, which are either in accordance with international law or practice relating to consular officers recognized in the receiving state or are acts to which no objection is taken by the receiving state.

(2) It is understood that in any case where any Article of this Convention gives a consular officer the right to perform any functions, it is for the sending state to determine to what extent its consular officers shall exercise such right.

(3) Nothing contained in this Convention shall be construed to permit a consular officer or employee to take advantage of the rights, immunities or privileges accorded thereby for any purposes other than those for which these benefits have been granted by the terms of this Convention.

(4) A consular officer may levy the fees prescribed by the sending state for the performance of consular services.

### ARTICLE 27

(1) This Convention shall be ratified and the instruments of ratification thereof shall be exchanged at Washington. The Convention shall enter into force on the thirtieth day after the date of exchange of the instruments of ratification and shall continue in force for the term of five years.

(2) Unless six months before the expiration of the aforesaid term of five years either High Contracting Party shall have given notice to the other of the intention to terminate this Convention, the Convention shall continue in force after the aforesaid term and until six months from the date on which either High Contracting Party shall have given to the other notice of termination.

In witness whereof, the respective Plenipotentiaries have signed this Convention and have hereunto affixed their seals.

Done in duplicate, in the English and Japanese languages, both texts being equally authentic, at Tokyo, this twenty-second day of March, one thousand nine hundred sixty-three.

For the United States of America:

 Edwin O. Reischauer  [seal]

For Japan:

 Masayoshi Ohira  [seal]

### PROTOCOL

At the time of signing the Consular Convention between the United States of America and Japan, the undersigned Plenipotentiaries, duly authorized by their respective Governments, have further agreed on

20          CONSULAR CONVENTION WITH JAPAN

the following provisions, which shall be considered integral parts of the aforesaid Convention:

1. Notwithstanding the provisions of Article 1, this Convention shall not apply to any area set forth in Article 3 of the Treaty of Peace with Japan signed at the city of San Francisco on September 8, 1951, as long as any such area has not been returned to Japanese jurisdiction.

2. The phrase "one or more persons acting on behalf of the sending state" referred to in Articles 7 and 12 includes, when the United States of America is the sending state, the Secretary of State, the Chief of the Diplomatic Mission in Japan, or any other officer of the United States of America acting on its behalf; but does not include any private individual or juridical entity.

3. Notwithstanding the provision of paragraph (5) of Article 2, the term "vessel" shall, for the purpose of paragraph (1) of Article 19, paragraphs (1), (2), (3) and (5) of Article 20 and paragraphs (1) and (4) of Article 21, be deemed to include:

(a) any vessel of the receiving state or any third country chartered on bare boat terms by a national or nationals of the sending state; and

(b) any vessel of the sending state except that chartered on bare boat terms by a national or nationals of the receiving state.

4. Without derogation of such rights and benefits as the sending state may have under international law with respect to diplomatic property, the provisions of Article 12 (except subparagraphs (b) and (c) of paragraph (1)) shall likewise apply with respect to immovable property owned or otherwise held or occupied by the sending state and used either for embassy purposes or for residences for one or more officers or employees of the embassy.

5. The term "members of his family forming part of his household" referred to in paragraph (6) of Article 11, paragraph (2) of Article 14 and paragraph (1) of Article 25 shall be understood to include only those persons residing in the receiving state who are substantially dependent upon the consular officer or employee for support.

IN WITNESS WHEREOF, the respective Plenipotentiaries have signed this Protocol and have hereunto affixed their seals.

DONE in duplicate, in the English and Japanese languages, both texts being equally authentic, at Tokyo, this twenty-second day of March, one thousand nine hundred sixty-three.

For the United States of America:

EDWIN O. REISCHAUER.

For Japan:

MASAYOSHI OHIRA.

O