**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AFL Telecommunications LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SurplusEQ.com Incorporated, Tech Sales LLCV, Daniel Parsons,<br><br>    Defendants. | No. CV11-1086 PHX DGC<br><br>**ORDER** |

   This case concerns claims by Plaintiff AFL Telecommunications, LLC ("AFL") against Defendants for copyright infringement, false advertising, and unfair competition arising out of Defendants' sale of fusion splicers (devices used to splice fiber optic cable) made by AFL's Japanese parent corporation, Fujikura Ltd. At the Court's direction, the parties filed memoranda concerning a discovery dispute. Docs. 130, 131. Defendants seek production of five categories of documents from AFL. For reasons set forth below, the Court will require AFL to produce the requested documents. The Court will also enter an order limiting Defendants' review of the documents to "Attorneys Eyes Only."

   "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendants have shown the relevancy of the five categories of documents at issue.

   The source codes for the fusion splicers are relevant because AFL asserts a copyright infringement claim against Defendants based on the source codes. To establish copyright infringement, AFL must prove ownership of a valid copyright and copying of

constituent elements of the work that are original. *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). Discovery of the source codes is relevant to defense of the infringement claim. Defendants may seek to show that a valid copyright does not exist because the source codes are not original works of authorship or are largely copied from works not subject to copyright protection.

The other categories of documents sought by Defendants are also relevant within the meaning of Rule 26(b)(1). AFL contends that Defendants are guilty of unfair competition because they have sold versions of fusion splicers produced by Fujikura that have been modified and made substantially inferior to the original product. Discovery of technical specifications and schematics, documents showing performance testing and tolerances, repair and warranty logs, and repair manuals will enable Defendants to challenge AFL's allegation that products sold by AFL perform in a substantially inferior way or require more frequent repairs.

AFL contends that the burden of producing the documents will substantially outweigh their benefit to Defendants. AFL seeks an order precluding discovery of the documents under Rule 26(b)(2)(C)(iii), a provision that authorizes the Court to enter a protective order when the burden or expense of discovery outweighs its likely benefit.

The sole burden identified by AFL in making this argument is the risk that Defendants may misuse the documents to expand the sale of Fujikura fusion splicers on the gray market. AFL quotes statements by employees of Defendants suggesting that Defendants have sought to obtain this very information through other means in order to increase their ability to sell Fujikura fusion splicers on the gray market. The Court recognizes this risk, but concludes that it can be addressed satisfactorily by limiting access to the produced documents to Defendants' attorneys. Defendants do not argue that examination of the documents by their clients is essential to the defense of this case. The Court will also permit defense counsel to share copies of these documents with expert witnesses who agree to be bound by the terms of the protective order entered in this case and by the terms of this order. Such sharing should enable the defense to utilize the

documents in responding to the claims brought by AFL without the risk that the documents may be used to AFL's competitive disadvantage.

Finally, AFL contends that the source codes are not in its possession or control, but rather are held exclusively by Fujikura. In support of this argument, AFL cites *In Re Citric Acid Litigation*, 191 F.3d 1090 (9th Cir. 1999). AFL argues that the Ninth Circuit in this and prior decisions adopted a "legal control" test, holding that documents are within the "control" of a corporate entity within the meaning of Rules 34(a) and 45(a) only if the corporation has the legal right to acquire and produce the documents. AFL argues that it does not have such a legal right – that Fujikura is the only entity that has the right to control and produce the source codes.

Although it is true that *Citric Acid* adopted the legal control test, it specifically stated that its decision was consistent with decisions in other circuits, including *Gerling International Insurance Co. v. Commissioner*, 839 F.2d 131, 140-41 (3rd Cir. 1988). *See* 191 F.3d at 1108. *Gerling* adopted the legal control test, but provided a more expansive definition than AFL suggests. Specifically, *Gerling* extended the test to a situation "where the subsidiary was an agent of the parent in the transaction giving rise to the suit and in litigating the suit on the parent's behalf." 839 F.2d at 140. *Gerling* cited as an example a case where "the subsidiary was the exclusive seller of its parent's products in the United States." *Id.* *Gerling* further explained that "[w]here the relationship is thus such that the agent-subsidiary can secure documents of the principal-agent to meet its own business needs and documents helpful for use in the litigation, the courts will not permit the agent-subsidiary to deny control for purposes of discovery by an opposing party." *Id.*

Because the Ninth Circuit cited *Gerling* favorably in its adoption of the legal control test, the Court concludes that the rationale of *Gerling* should apply in this case.[1]

---

[1] AFL also cites *United States v. International Union of Petroleum & Industrial Workers, AFL-CIO*, 870 F.2d 1450 (9th Cir. 1989), in support of the legal control test, but that case concerned a local and an international union that were legally distinct

Defendants cite evidence, without contradiction from AFL, that AFL is a wholly-owned subsidiary of Fujikura, the exclusive authorized distributor of Fujikura fusion splicers in the United States, and the exclusive licensee of Fujikura's intellectual property rights related to fusion splicers. Doc. 130 at 8. Defendants further cite evidence, again without contradiction from AFL, that the licensee relationship between AFL and Fujikura was created specifically so that AFL could bring this lawsuit, that AFL houses two Fujikura technicians in its office in South Carolina to perform repairs on fusion splicers, and that AFL and Fujikura have maintained a close relationship throughout this lawsuit, with Fujikura personnel providing expertise and declarations when needed by AFL. *Id*. at 9.

The Court concludes that the legal control test set forth in *Gerling*, and cited favorably in *Citric Acid*, applies to these facts. The Court accordingly concludes that AFL is obligated to produce the source codes sought in Defendants' discovery requests.[2]

**IT IS ORDERED:**

1.   Defendants' motion to compel (Doc. 130) is **granted**. Plaintiff AFL shall produce the five categories of documents at issue in this dispute and sought in Defendants' First Set of Requests for Production Nos. 5-10, by **July 20, 2012**.

2.   Documents produced pursuant to this order shall be seen and reviewed only by Defendants' counsel and support staff in counsel's law offices. They shall not be shared in any way with any employee or officer of Defendants. The documents may be shared with outside expert witnesses who agree in writing to be bound by the protective

---

entities. The Ninth Circuit found that the constitution governing the two unions did not give the international union authority to obtain or produce documents from the local union. *Id.* at 1453. The case is inapposite to the present dispute. The Ninth Circuit's later decision in *Citric Acid*, with its approving citation to *Gerling*, is more relevant.

[2] AFL also cites *Ehrlich v. BMW of North America, LLC*, 2011 WL 3489105 (C.D. Cal. 2011), in support of its argument that Defendants have failed to satisfy the Ninth Circuit's legal control test. But the party opposing discovery in *Ehrlich* did what AFL has not done here – it produced evidence refuting the factual assertions that would have brought the case within the holding of *Gerling*. *Id.* at *2. AFL also cites *Beilstein-Institut Zur Forderung Der Chemischen Wissenschaften v. MDL Information Systems, Inc.*, 2006 WL 3742244 (N.D. Cal. 2006), but that case also involved the submission of evidence showing that the corporations in question were not in a parent-subsidiary or principal-agent relationship like AFL and Fujikura. *Id.* at *3.

order in this case and by this order.

3. The deadline for fact discovery has expired. *See* Doc. 95. The only exception is for the depositions to be conducted in Japan pursuant to the Court's previous order. Doc. 124. Thus, although Defendants are obtaining these documents after the close of fact discovery, they will not be permitted to conduct additional fact discovery related to the documents other than the depositions in Japan. Defendants' document production requests were served on November 10, 2011, with responses produced by AFL on December 13, 2011. Doc. 130 at 2-3. Defendants had ample time to bring this issue to the Court's attention. Having waited six months until the close of discovery to do so, Defendants will not be permitted additional time to conduct fact discovery related to information contained in the documents. Because expert disclosures are still underway, the documents may be used in Defendants' expert disclosures, consistent with the protective order entered above.

Dated this 5th day of July, 2012.

David G. Campbell
United States District Judge